# Richmond

VIRGINIA GAS DISTRIBUTION CORPORATION v. WASHINGTON GAS LIGHT COMPANY.

November 30, 1959.

Record No. 5010.

Present, All the Justices.

The opinion states the case.

*Thomas B. Gay* (*H. Merrill Pasco; C. E. Goodwin; Hunton, Williams, Gay, Moore & Powell,* on brief), for the appellant.

*David J. Mays* (*C. Oscar Berry; S. S. Hollingsworth; Tucker, Mays, Moore & Reed,* on brief), for the appellee.

Spratley, J., delivered the opinion of the court.

We are asked to determine whether the State Corporation Commission acted reasonably in finding that it was in the public interest to allot certain territory in northern Virginia for gas utility service to Washington Gas Light Company rather than to Virginia Gas Distribution Corporation.

Virginia Gas Distribution Corporation, hereinafter referred to as Virginia Gas, is a Virginia public service company and a wholly owned subsidiary of The Columbia Gas System, Inc., a registered holding company organized and existing under the laws of the State of Delaware. Washington Gas Light Company, hereinafter referred to as Washington Gas, is a domestic corporation of the District of Columbia and the Commonwealth of Virginia, independently owned by stockholders residing within its service area.

Both companies purchase their supplies of natural gas from Atlantic Seaboard Corporation, a wholly owned subsidiary of the Columbia Gas System, Inc. Atlantic Seaboard operates gas transmission pipeline systems running from West Virginia, and entering Virginia in Alleghany and Warren Counties, and continuing northeasterly through Fairfax, Loudoun and Prince William Counties to the District of Columbia. It sells natural gas at wholesale to the companies here involved and to other gas distributors in Virginia, West Vir-

ginia and Maryland. Virginia Gas serves a dozen or more counties and communities near the pipelines of Atlantic Seaboard by tapping or connecting its transmission lines with the pipelines owned and operated by Atlantic Seaboard. Washington Gas is engaged in the distribution and sale of natural gas in the District of Columbia, in the metropolitan area of Washington, D. C. and in adjacent portions of Virginia and Maryland.

Washington Gas filed with the State Corporation Commission on July 11, 1958, its application for a certificate of public convenience and necessity for new and additional service areas in Fairfax and Loudoun Counties, Virginia, pursuant to the Utility Facilities Act of Virginia, § 56-265.3*, Code of Virginia, 1950.

The service area requested included International Airport and its environs at Chantilly near Herndon, situated partly in Fairfax and Loudoun Counties. Washington Gas already served the City of Falls Church, in Fairfax County, the City of Alexandria, Arlington County, and the greater portion of Fairfax County.

On July 15, 1958, the Commission issued certificates to Virginia Gas covering territory in the Town of Herndon and environs, including the Chantilly Airport, and other territory adjacent to a certain main pipeline of Atlantic Seaboard, as shown on maps attached to the certificates.

Thereafter, on September 3, 1958, Washington Gas filed an amended application seeking new and additional service area for development purposes in Fairfax, Loudoun and Prince William Counties. It asked for all of Prince William County, except the areas then served by Virginia Gas. Its original and amended applications were set for hearing on October 2, 1958.

On September 12, 1958, Virginia Gas asked leave to intervene in the matter of the applications of Washington Gas, and filed a motion to dismiss the applications. Its petition and motion were set down for hearing on October 2, 1958, at the time when the application of Washington Gas was to be heard.

On October 1, 1958, Virginia Gas presented an application to the Commission seeking authority to serve additional areas in Prince

---

* 56-265.3 "On application by any company, the Commission, after formal hearing upon such notice to the public as the Commission may prescribe, may, by a certificate of convenience and necessity, allot territory for development of public utility service by the applicant if the Commission finds such action in the public interest."

William County, in which county it had extended its facilities and service without prior certification by the Commission.

On October 2, 1958, the Commission took under consideration the several applications of Washington Gas and Virginia Gas and the petition of Virginia Gas to intervene in the proceeding, as well as the motion to dismiss the application of Washington Gas. It proceeded to hear testimony, received exhibits from both parties, and heard argument. Virginia Gas, both in its application of October 1, 1958, and at the time of the hearing on October 2, 1958, opposed the grant of any certificate to any one for the territory involved on the ground that the purpose and intent of Code, § 56-265.3 authorizing the Commission to "allot territory for development of public utility service" did not authorize certification because present circumstances did not indicate any immediate demand for public utility development.

The Commission denied the motion to dismiss the application of Washington Gas and deferred a final decision on the merits until certain maps could be obtained showing the unlicensed extensions made by Virginia Gas in Prince William County.

After the hearing on October 2, 1958, Virginia Gas, reaching the conclusion that Code, § 56-265.3 would be construed by the Commission to authorize it, in its discretion, to grant certificates for public utility service in areas where there was a demand for development, presented on October 24, 1958, an amendment to its application filed on October 1, 1958. It then requested that it be certified to serve new and additional territory in Prince William and Loudoun Counties.

On October 28, 1958, the Commission, being of opinion that the certificates applied for by Washington Gas should, in the public interest, be granted to it, ordered that amended and new certificates be issued to Washington Gas as follows:

(1) Certificates covering the Cities of Alexandria and Falls Church, the Towns of Fairfax and Vienna, and the territory outlined in red on map of Fairfax County, attached thereto, excluding 100 feet on both sides of pipelines of the Atlantic Seaboard Corporation.

(2) Certain territory in Loudoun County outlined in red on map of Loudoun County, attached to the certificate, excluding 100 feet on both sides of pipeline of Atlantic Seaboard Corporation.

(3) The territory outlined in red on map of Prince William County, attached to the certificate, excluding the yellow shaded

area, and 1500 feet on both sides of the pipelines of the Atlantic Seaboard Corporation and Virginia Gas Distribution Corporation.

In its unanimous opinion, the Commission, after briefly setting out the proceedings and the evidence, stated and found that the public interest required the allotment of the territory in question for development to Washington Gas. It said this:

"It seems to us to be clearly in the public interest and clearly within the intent of the applicable statute that this rapidly growing area around Washington be allotted now for future development instead of being left open for future isolated scrambles. Virginia Gas did not apply for an allotment of territory until after it learned that the Commission had decided to make the allotment to Washington Gas Light. Its dominant motive was to block Washington Gas Light. We have not the slightest doubt that the welfare of this region will be served better by allotting it to Washington Gas Light Company instead of to Virginia Gas Distribution Corporation."

On October 30, 1958, the Commission granted a certificate to Virginia Gas authorizing the furnishing of gas service in the Town of Manassas, Manassas Park, and Quantico, and in the territory shown by the yellow shaded area on the map of Prince William County, attached thereto, and to main line customers located a distance of 1500 feet on both sides of the pipelines of Atlantic Seaboard Corporation and Virginia Gas, territory already served by Virginia Gas without certification.

On November 17, 1958, Virginia Gas filed its petition for a rehearing of the order of October 28, 1958, seeking an opportunity to present additional evidence in the effort to show that the certificate granted to Washington Gas was not in the public interest. The Commission denied the petition on November 28, 1958.

Virginia Gas assigns error to so much of the Commission's order of October 28, 1958, as certificated to Washington Gas all of the territory in Prince William County not certificated to Virginia Gas and so much of the territory in Loudoun County as overlaps the service area requested by Virginia Gas in its amended application of October 24, 1958. It does not appeal from so much of the order as awarded Washington Gas all of the territory in Fairfax County, which the latter sought authority to serve. It also contended that the Commission erred in not granting its petition for a rehearing.

Virginia Gas insists that the final order of the Commission is not in the public interest upon the grounds that Virginia Gas can furnish

as good service in the allotted territory as Washington Gas; that the allocation of the territory to Washington Gas will result in a wasteful duplication of utility facilities, smothering and throttling the economic advancement of Virginia Gas; and that the retail rates charged by Washington Gas are higher than those charged by Virginia Gas.

The questions presented are largely factual. The law applicable is not in dispute. Section 156(f) of the Constitution sets out the rule of decision which governs us, the pertinent portion of which section reads as follows:

"* * * The appellate court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the Commission appealed from, as well as any other matter arising under such appeal; provided, however, that the action of the Commission appealed from shall be regarded as prima facie just, reasonable and correct, * * *."

The State Corporation Commission is established by the Constitution as a department of government. Under the Constitution all public service corporations under the control of the police power of the State are subject to the supervision of the Commission. Constitution, § 156. Through the Commission they are controlled and regulated. The Commission is aided by a staff of agents, engineers and experts in arriving at its decisions. The allotment of territory for development of public utility service is expressly made the duty of the Commission. Constitution, § 156(f). The Commission has the opportunity to know the ability and experience of the utility corporation, and the circumstances in the territory sought by it. We cannot sit as a board of revision to substitute our judgment for that of matters within the province of the Commission. *City of Lynchburg* v. *Chesapeake and Potomac Telephone Company of Virginia*, 200 Va. 706, 721, 107 S. E. 2d 462; *Board of Supervisors of Arlington County* v. *Virginia Electric and Power Company*, 196 Va. 1102, 87 S. E. 2d 139; *City of Norfolk, et al.* v. *Chesapeake and Potomac Telephone Company of Virginia*, 192 Va. 292, 301, 64 S. E. 2d 772; *Aetna Insurance Company* v. *Commonwealth*, 160 Va. 698, 717, 169 S. E. 859.

The action of the Commission must be regarded by us as *prima facie* just, reasonable, and correct, Constitution, § 156(f), and cannot be upset in the absence of a showing of an abuse of the discretion vested in it. *City of Lynchburg* v. *Chesapeake and Potomac Telephone Company of Virginia, supra*, page 713; *Petersburg, etc., Ry. Co.* v. *Commonwealth*, 152 Va. 193, 200, 146 S. E. 292; *Atwood Trans-*

*port Co. v. Commonwealth,* 197 Va. 325, 332, 88 S. E. 2d 922; *Chesapeake and Potomac Telephone Company of Virginia* v. *Commonwealth,* 147 Va. 43, 58, 136 S. E. 575.

This brings us to the question: Does the evidence support the finding of the Commission? We think it does.

Washington Gas has been engaged in business continuously since 1848. It serves a total of 370,000 gas meters, of which 82,000 are located in the Virginia communities of Falls Church, Alexandria, Arlington County, and Fairfax County. Virginia Gas serves approximately 25,000 customers in 13 communities of Virginia, in areas located along or adjacent to the pipelines of Atlantic Seaboard Corporation.

Washington Gas has extensive facilities for gas production, storage and distribution, ample personnel to serve areas allotted to it, and its operations are larger in Virginia than any other gas company operating there. Its facilities are completely interconnected and enable it to bring to the new territory sought by it a complete system fully adequate, with trained personnel available, to be responsive to the public need. Virginia Gas, on the other hand, has no facility for the production of gas, or for its storage. It has only a limited number of employees to serve its customers widely separated. Except for its pipeline to Quantico, in Prince William County, the communities served by it are not connected by facilities owned or operated by it, but are connected and served through pipelines separately connected with the main pipelines of Atlantic Seaboard.

The territory involved is adjacent to the City of Washington, D. C., and within its so called metropolitan area. It is a substantial part of the Virginia portion of the "National Capital Region," as defined by the Congress of the United States in Public Law 592, 82nd Congress, Second Session, Chapter 949, H. R. 7502, U.S. Code Annotated, Title 40, § 71 (b). It has had an enormous growth in recent years and is said to be the fastest growing area in the United States with the exception of Houston, Texas. At present mostly rural, it is rapidly becoming urban. New highways, streets and bridges have improved transportation conditions. Thousands of homes are planned or under construction; industry and business are being expanded; and Federal activities and construction extended. At the borderline of Fairfax and Loudoun Counties, near Herndon, it is estimated that eight to ten thousand persons will be employed in the activities of the Chantilly International Airport alone. In those counties and in Prince

William County, there is an increasing demand for gas service, and all indications point to continued expansion and enlargement of the demand.

Washington Gas, by reason of its established facilities, its operational and maintenance personnel, and experience, is equipped to render a high grade gas utility service. In its past operations, it has shown a willingness to meet such demand, and it has been alert to consumer needs. It furnishes a type of service required for residential and small businesses. It provides an inexpensive method for extending connections to consumers' buildings from its pipeline mains. There are no facts in evidence which indicate that Virginia Gas can furnish better service than Washington Gas.

There is no evidence showing that the allotment to Washington Gas will necessarily result in a wasteful duplication of the facilities of Virginia Gas, nor operate to smother or throttle its operations. Virginia Gas and Washington Gas were each allotted considerable areas in addition to those already served by them. Forty-two square miles were allotted to Virginia Gas in Fairfax and Loudoun Counties by the order of July 15, 1958, and 25 additional square miles in Prince William County, exclusive of the Federal reservation at Quantico Marine Base, were allotted to it on October 30, 1958. These orders allot ample areas for development by the facilities already established by Virginia Gas. In addition, it has the opportunity to extend its operations in the territory traversed by the main pipelines of Atlantic Seaboard from the western part of Virginia to the areas here involved. The expansion of Washington Gas is more or less restricted to the territory in the metropolitan area of Washington, D. C. Virginia Gas has heretofore confined its service to the extension of its pipelines where real estate development has already taken place and its service is more profitable and convenient. It is not an interconnected distribution company, and it may expand as the need for its service increases, and it deems it advisable to render such service.

It is true that consumers of Virginia Gas pay a lower rate than that charged by Washington Gas. Retail rates are, of course, a factor relating to the public interest; but it is only one of many factors to be considered, and then only in the light of the relative value of the service purchased. There must be taken into consideration the area involved; the ability of the utility to serve the area normally and under emergencies; the different types of service rendered; and the character of service required. The basic test relating to the allotment

of territory for development is the ability of the applicant to render adequate service to the public under all of the circumstances there and then prevailing. The establishment of rates, tariffs, schedules and provisions governing public utility service is peculiarly within the province of the State Corporation Commission. According to the record, Washington Gas is fully capable of meeting the requirements of rendering a type and degree of service fulfilling substantially the demands of the present and continued enlargement and expansion of the area in question.

We find no merit in the contention that the Commission should have granted Virginia Gas a rehearing of the order of October 28, 1958, because of the failure of the Commission to hold a separate hearing on the application filed by Virginia Gas on October 24, 1958, for new and additional territory in Prince William and Loudoun Counties. It must have been clear to Virginia Gas when the Commission entered its order of July 15, 1958, allotting to it new and additional territory, and in the proceedings at the October 2, 1958, hearing that the Commission did not accept the view of Virginia Gas that no immediate allotment should be made of the territory sought by Washington Gas. Virginia Gas participated in the October 2, 1958, hearing without limitation or restriction. It had full and complete opportunity to present new evidence, if any it had, that it would not be in the public interest to grant the application to Washington Gas. It was then obvious that the Commission would allot the area involved for the development of gas public utility service to the best qualified applicant. However, Virginia Gas did not file its amended application for new and additional areas until 22 days after the hearing had been held, that is, 4 days before the entry of the final order.

The petition for rehearing presents no allegation or averment, the substance of which was not fully investigated at the October 2, 1958, hearing. All of the pertinent facts were then presented and considered. There is nothing to indicate that the Commission should have, or would have, reconsidered its conclusion in view of the proceedings, facts and circumstances before it. A delay occasioned by a separate hearing, under the circumstances, would not have been in the public interest. The proceedings had already been pending for a year. In the meantime, hundreds of new houses had been constructed in the territory and others were in the process of construction, in a territory which has been envisaged by witnesses as a home, industrial, com-

mercial and governmental complex of many additional thousands of persons in the foreseeable future.

It clearly appears that the proceedings before the Commission met proper procedural standards, and that the evidence was given due consideration. A fair and impartial review of the record supports the Commission's action as just, reasonable and correct, and in the public interest. Virginia Gas has not rebutted the presumption of its correctness, and there is nothing to show that the action complained of was arbitrary or capricious.

The order appealed from is, therefore, affirmed.

*Affirmed.*