# Richmond

ATLANTIC GREYHOUND LINES OF VIRGINIA, INC., ET AL. v. SILVER FOX LINES, ET AL.

June 10, 1963.

Record No. 5618.

Present, All the Justices.

The opinion states the case.

*John C. Goddin* and *Raymond H. Warns* (*Shewmake, Gary, Goddin & Blackwell; Battle, Neal, Harris, Minor & Williams*, on brief), for the appellants.

*R. Paul Sanford* (*Sanford & Clement*, on brief), for the appellees.

Case submitted on briefs.

WHITTLE, J., delivered the opinion of the court.

This is an appeal of right by Atlantic Greyhound Lines, Incorporated, and Virginia Stage Lines, Incorporated, from an order entered by the State Corporation Commission on July 23, 1962, which granted a certificate of public convenience and necessity as a special or charter party carrier to Silver Fox Lines, Danville, Vir-

ginia, authorizing it to operate motor vehicles as a special or charter party carrier from the origin point of the City of Danville to other points in Virginia.

While four errors are assigned by appellants, they say in their brief that, "The only question involved in this appeal is whether or not the public convenience and necessity require the service proposed by Silver Fox."

The statute which governs special or charter party carriers is Chapter 12.4, § 56-338.50, *et seq.*, of the Code of Virginia 1950, as amended. The particular section involved, which was enacted in 1960, is quoted in the margin.[1]

The evidence before the Commission was not lengthy. It shows, and the Commission so found, that the applicant, Silver Fox Lines, holds a certificate of public convenience and necessity to transport passengers in interstate commerce and desires to have intrastate authority to perform special or charter party carrier service from Danville to other places in Virginia. The evidence discloses that the applicant had received several requests for such service which it had not been able to render, and that such requests were referred to another carrier. The evidence of that carrier confirms this statement and adds that it had at times received requests for such service which it could not perform; that these calls for service, averaging about two per week, came from schools and churches within the City of Danville; that these institutions stated that they had been unable to get buses when needed.

Witness Gibson, who holds a special charter certificate, testified that there is a need for the service proposed by the applicant; that he had quite often leased buses from the applicant and at times could not get enough buses to take care of requests for service.

The Commission, in its opinion, states:

[1] "§ 56-338.54 WHEN CERTIFICATE GRANTED.—The public convenience and necessity to be served by special or charter party carriers is to provide economical, comfortable and convenient transportation for special or charter parties and in the issuance of all types of certificates authorized by this chapter the Commission shall consider all facts bearing on that purpose, including existing means of transportation, the character of the applicant, and the kind and location of the equipment he proposes to use. The Commission shall issue no more certificates than the public convenience and necessity require, and shall place such restrictions upon such certificates as may be reasonably necessary to protect any existing motor carrier, whether such carrier is operating under certificates issued by the Commission under this chapter or under chapters 12 (§ 56-273, *et seq.*) or 12.3 (§ 56-338.40 *et seq.*) of this title or otherwise, but the Commission shall not deny a certificate solely on the ground that the applicant may render special or charter party service originating at the same point or points as such other motor carriers."

"The evidence shows that, at times, because of the unavailability of buses, private automobiles were used. It may be that Trailway or Greyhound could have furnished buses most of the time, but the evidence shows that, at certain times, they could not, and, at times, their service for one reason or another was not desired. It may be that the difference in the rate for church picnics, football games, high school band concerts and similar events had something to do with not engaging either Trailway or Greyhound, but, regardless of these assumptions, it is a fact, as is shown by the evidence, that at times no buses were available and private automobiles were used."

It will be seen from a reading of the statute that the economy of operation, as well as the convenience of service, exisiting means of transportation, kind and location of equipment, shall be taken into consideration, and the Commission shall place such restrictions on such certificates as may be reasonably necessary to protect any exisiting motor carriers; but, says the statute, "* * * the Commission shall not deny a certificate solely on the ground that the applicant may render special or charter party service originating at the same point or points as such other motor carriers."

It appears that the Commission, when passing upon this matter, considered the entire statute and each condition contained therein applicable to the granting of the certificate in question. The certificate was restricted to business originating within the City of Danville. The Commission found that the operation by the applicant was more economical; that the equipment to be used by the applicant is located in Danville where it at all times may be readily available for service. There was no attack made upon the fitness of the applicant. The Commission further found that "The evidence unquestionably shows that the objectors were not meeting the needs of the public. Those requiring the service of a charter party carrier do not desire expensive, luxurious type buses. They are more interested in economical service rather than luxury service and higher charges. Moreover, it is easy to understand that a carrier whom they can readily contact, located locally with equipment readily available, may meet the needs of those desiring service as described in the evidence more economically, conveniently and satisfactorily than can the objectors."

The following definitions are found in Chapter 12.4, § 56-338.50, of the Code of 1950, as amended, with which we are here concerned:

"(c) *'Special or Charter Party Carrier'*, means a restricted common carrier authorized to transport passengers in special or charter parties under the provisions of this Chapter.

"(d) *'Special or Charter Party'*, means a group movement of passengers transported under a single contract made with one person for an agreed charge for such movement regardless of the number of passengers transported and for which transportation no individual or separate fares are solicited, charged, collected or received by the carrier."

While it appears that the objectors under their certificates are authorized to render this character of service, their main function is the transportation of passengers over designated routes as common carriers, for which each passenger is charged a separate fare.

We have many times held that the finding of the Commission must be regarded by the Supreme Court of Appeals as *prima facie* just, reasonable, and correct, and cannot be upset in the absence of a showing of an abuse of the discretion vested in it by statutory and constitutional provisions. *City of Bristol* v. *Railway Co.*, 200 Va. 617, 624, 107 S. E. 2d 473, 477, 478.

We cannot sit as a board of revision to substitute our judgment for that of the Commission on matters within its province. *Va. Gas Distribution Corp.* v. *Washington Gas Light Co.*, 201 Va. 370, 375, 111 S. E. 2d 439, 443.

For the reasons stated the order of the Commission is

*Affirmed.*