## Staunton

### Board of County Supervisors of Fairfax County, Virginia v. Alexandria Water Company.

### Fairfax County Water Authority v. Alexandria Water Company.

September 9, 1966.

Record Nos. 6237, 6238.

Present, All the Justices.

*William C. Bauknight (Bauknight, Prichard, McCandlish and Williams; John F. Kay, Jr.; Denny, Valentine and Davenport; Ralph G. Louk, Commonwealth's Attorney* for Fairfax County, on brief), for the appellants.

*John W. Riely (E. Milton Farley, III; Richard G. Joynt; Kurt Berggren; Hunton, Williams, Gay, Powell and Gibson,* on brief), for the appellee.

GORDON, J., delivered the opinion of the court.

The State Corporation Commission, on application of The Alexandria Water Company, amended the Company's certificate of public convenience and necessity so as to authorize it to furnish water in a nineteen square mile area in Fairfax County.[1] This newly certificated area is contiguous to the area covered by the Company's outstanding certificate, which included the City of Alexandria, part of Fairfax County and a small part of Prince William County. The amendment to the Water Company's certificate was granted over the protest of the Board of Supervisors of Fairfax County and the Fairfax County Water Authority, who intervened in the proceeding and now appeal.[2]

Code § 56-265.3 authorizes the Commission to "allot territory for development of public utility service . . . if the Commission finds

(1) The Company's application was filed pursuant to the Virginia Utility Facilities Act, which provides (so far as is relevant):

"On application by any company the Commission * * * may, by certificate of convenience and necessity, allot territory for development of public utility service by the applicant if the Commission finds such action in the public interest." Va. Code Ann. § 56-265.3 (Repl. vol. 1959).

(2) The Water Company, a Virginia public utility corporation, could not serve the disputed area without obtaining a certificate of public convenience and necessity from the Commission. Va. Code Ann. § 56-265.2 (Repl. vol. 1959). The County and the Water Authority appeared as protestants, and not as applicants for a certificate to the Authority. The Authority is free to serve the area without permission from the State Corporation Commission or any other State agency. However, the enabling act under which the Authority was organized now provides: "None of the powers granted by this chapter shall be exercised in the construction, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate existing utilities, public or private, serving substantially the same purposes and area." Va. Code Ann. § 15.1-1251 (Repl. vol. 1964).

such action in the public interest". See footnote (1). The Commission found, "as a fact, that the allotment of these nineteen square miles for development by the Water Company is in the public interest".

The question is not whether we agree with the Commission's finding of fact, but whether its finding was supported by the evidence. See *Virginia Gas Corp.* v. *Washington Gas Light Co.*, 201 Va. 370, 111 S.E.2d 439 (1959).

We will briefly summarize the evidence upon which the Commission based its finding. Water service was necessary for the development of the nineteen square mile area in dispute, and water service was not available. Developers who proposed to construct houses in the area desired service from the Water Company. The Water Company's supply of water was adequate to serve its already certificated area and the disputed area for many years. The Company had a 36-inch water main within 1,500 feet of the disputed area, and it was in position to supply water to the area. The Company's water rates were lower than the Authority's rates.

The Commission found that the Water Company's evidence "clearly proved" that its application should be granted. In the Commission's opinion, "[t]he reasons advanced by the County and its Water Authority for denying the application are based on predictions that are completely unconvincing".

The Water Authority's principal complaint is that the Commission failed to consider the long-term public interest of northern Virginia as a whole. The Authority contends this public interest requires that the disputed area be served with Potomac River water, with which the Authority proposes to serve the area, and not with water from Occoquan Creek, the Water Company's sole source of water.[3] The Authority says the Commission erred in ignoring its projections, up to the year 2010, of the available supply of water

---

(3) As stated in the text, the Water Authority proposes to serve the disputed area with water from the Potomac River. The evidence indicates, however, that the supply of Potomac water will become inadequate for the areas now dependent upon it before the supply of Occoquan water becomes inadequate for the Water Company's certificated areas, including the newly certificated area. The Water Authority's expert testified: "We believe that that limit [the maximum Potomac water that can be obtained by the Water Authority] will be approached in the not too distant future, and that an independent supply will be necessary." He said that studies had been made by the Corps of Engineers, but apparently the project for development of more water has not progressed beyond the planning stage.

from Occoquan Creek and the needs of the area that "logically" should be served with Occoquan water.[4]

The Water Authority contends the Commission should have denied the Water Company's application on the basis of these projections or predictions. It argues that Occoquan water should not be used to serve the disputed area because at some future time, probably in the 1980's, the supply of Occoquan water will be adequate to serve only the Water Company's already certificated area. It contends that if Occoquan water is to be used to serve new areas, it should be used to serve other areas that "logically" should be served by Occoquan Creek.

The Commission found that Occoquan Creek will furnish an adequate supply of water "for the next ten or fifteen years". The Water Authority does not controvert this conservative finding. In fact, its expert predicted that the needs of the Water Company's already certificated area would not exceed the supply of Occoquan water until approximately 1985, and that the addition of the disputed area would advance that date by "[n]ot many years".

The County and Water Authority ask us to hold as a matter of law that service of the disputed area with water drawn from Occoquan Creek is not in the public interest. But this is a factual determination, which should be and has been made by the Commission. In granting the Water Company's application, the Commission found that the allotment to the Water Company of the disputed area, to be served with Occoquan water, was in the public interest. It based this determination upon evidence showing the Water Company's ability to furnish an adequate supply of water from Occoquan Creek for a reasonable period of time. It rejected the argument that the application should be denied because of predicted inadequacy of the Water Company's supply of water some twenty years in the future. We will not disturb the Commission's factual finding.

■ Next, the Water Authority contends that the maintaining of the Water Authority's credit standing and a favorable rating of its revenue bonds is in the public interest, but the Commission failed to consider this public interest when it approved the Water

---

(4) By other areas that "logically" should be served by the Occoquan, the Authority apparently refers to certain areas in Prince William County that are not included in the Water Company's service area but were included in the Authority's projections of water supply and needs. The Authority's expert, who prepared the projections, was unable to identify these areas clearly.

Company's application. The Authority says the buyers of its 1965 revenue bonds reasonably believed the Authority would serve the disputed area. Further, it says its ability to sell future issues of its revenue bonds will be adversely affected by the Commission's authorizing the Water Company to serve the disputed area. The Authority argues "[w]hile the bond purchasers may not be the public, their acceptance, or lack thereof, of bonds issued to finance needed public facilities has a direct effect on the public".

The Commission correctly ignored this contention for at least two reasons.

First, the representations made to the purchasers of the Authority's bonds and the desirability of maintaining the Authority's favorable credit rating were not relevant to the issue in this proceeding. As we pointed out in *Virginia Gas Corp.* v. *Washington Gas Light Co., supra*, in determining the public interest under Code § 56-265.3, "[t]he basic test relating to the allotment of territory for development is the ability of the applicant to render adequate service to the public under all of the circumstances there and then prevailing". 201 Va. at 377-378, 111 S.E.2d at 444.

Secondly, the Authority admits the Legislature has not granted it the exclusive right to furnish water in Fairfax County. The record shows that the purchasers of the Authority's 1965 revenue bonds were put on notice that the Water Company might apply to the Commission for permission to serve additional areas in Fairfax County.[5] Even if the Authority had represented that it alone would

---

(5) The Authority's Official Statement, which furnished information in connection with its sale of the 1965 revenue bonds, disclosed (in a section headed "Competition") that approval of the Commission was required for any enlargement of the Water Company's certificated service area, that the Authority was not aware of any plans by the Water Company to apply for an enlargement of its certificated area, and that the Authority would oppose any such application if the proposed enlargement would adversely affect the Authority's interests. A partner of the firm that acted as managing underwriter for the Authority's bond issue testified that he expected the disputed area would become part of the Authority's service area; and if it had been known, before the bonds were sold, that the Water Company would apply for enlargement of its service area in Fairfax County "this would have made the financing more difficult, perhaps impossible". If the managing underwriter believed, before the bonds were sold, that an application for enlargement of the Water Company's service area would so seriously prejudice the bond purchasers, it is surprising that the firm-partner exercised no diligence to learn the facts. He admitted he did not even ask the Water Company what its plans were. No doubt he would have learned of its plans had he made an inquiry, for the Water Company's application was filed with the Commission within three weeks after the date of the Authority's Official Statement.

be permitted to serve the disputed area, this misrepresentation could not be interposed as an objection to the Commission's approval of the Water Company's application. The Authority having been granted no monopoly, it has no standing to object that competition by the Water Company will adversely affect its credit rating.

 Little need be said to dispose of the other objections to the Commission's decision.

The Water Authority had planned, before the Water Company's application was filed, to install a transmission main that would extend through and beyond the disputed area. The Authority says it must incur this expense to serve customers beyond the disputed area, but it will be deprived of revenue from customers within the disputed area if the Water Company is permitted to serve that area.[6] But this was merely a factor to be weighed by the Commission in determining whether the Water Company's service of the area was in the public interest.

The Authority argues that the Commission should have denied the Water Company's application to serve the disputed area because its already certificated area included "undeveloped territory in which it is responsible to furnish water service". The Authority's point, as stated in its brief, "is that the Company has ample territory already allotted to provide for its future development and to exhaust its water capacity as the area develops". The argument that the Water Company's already certificated territory would amply provide for the Company's future development had no bearing on the issue before the Commission. The issue was whether the public interest would be promoted by the Water Company's serving the disputed area. We have already dealt with the argument that the Water Company's supply of water may be exhausted.

We hold that the Commission's decision was supported by the evidence. Its order will be affirmed.

*Affirmed.*

---

(6) Counsel for the County and the Water Authority are indefinite as to the time when the Authority would commence water service in the disputed area if the Water Company's application were denied. They say in their brief: "When and if demand materializes, the Authority can and will serve it [the disputed area]. Were there a demand now, the Authority would be serving it."