Present:  All the Justices

LEVEL 3 COMMUNICATIONS OF VIRGINIA, INC.

v.  Record No. 040481    OPINION BY JUSTICE ELIZABETH B. LACY
                                    November 5, 2004

STATE CORPORATION COMMISSION, ET AL.

FROM THE STATE CORPORATION COMMISSION

Level 3 Communications of Virginia, Inc. (Level 3), appeals an order of the State Corporation Commission (Commission) denying its application for certificates of public convenience and necessity to provide local and interexchange telecommunications services throughout the Commonwealth.  Level 3's primary complaint is that the Commission misinterpreted the public interest criteria contained in Code § 56-265.4:4 and that the Commission's actions violated the Telecommunications Act of 1996.  47 U.S.C. § 151, et seq.

In reviewing a decision of the Commission, we apply well-established principles.  The Commission is a specialized body with broad discretion in regulating public utilities.  A decision by the Commission comes to this Court with a presumption of correctness.  We will not substitute our judgment in matters within the province of the Commission and will not overrule the Commission's findings of fact unless they are contrary to the evidence or without evidentiary

support.  _Virginia Gas Distribution Corp. v. Washington Gas Light Co._, 201 Va. 370, 375, 111 S.E.2d 439, 443 (1959).  However, we will reverse the Commission's order if it is based upon a mistake of law.  _Northern Virginia Electric Coop.v. VEPCO_, 265 Va. 363, 368, 576 S.E.2d 741, 744 (2003).

Level 3 is a wholly owned subsidiary of Level 3 Communications, LLC (Level 3 LLC).  In March 1998, the Commission granted Level 3 LLC's certificates of public convenience and necessity to provide local and interexchange telecommunications services in the Commonwealth.  (SCC report, Case no. PUC-1997-00197, 1998 SCC Ann. Rpt. 245 (March 31, 1998)).  Level 3 LLC became embroiled in controversies when it laid fiber optic cable to provide those services without the permission of the property owners.  Level 3 LLC decided that the controversies could be resolved by creating Level 3 as a Virginia public service corporation with the power of eminent domain to condemn the affected properties.  Level 3 LLC intended to transfer all its Virginia utility assets to Level 3 after Level 3 received its own certificates of public convenience and necessity to provide local and interexchange telecommunications service.

Level 3 was incorporated as a Virginia public service corporation on February, 11, 2003 and filed its application for certificates of public convenience and necessity to

provide interexchange and local telecommunications services on February 20, 2003. Pursuant to the Commission's order, Level 3 published notice of its application. In response, Brenda L. Stewart filed comments and asked for a hearing on Level 3's application. Ms. Stewart was one of the landowners involved in the disputes with Level 3 LLC. The request for a hearing was accompanied by a petition signed by other landowners who also had claims against Level 3 LLC.

The Commission held a two-day hearing and, on November 6, 2003, entered a final order denying Level 3's application without prejudice. Noting that Level 3 agreed that its management could be measured by the practices of Level 3 LLC's management, the Commission concluded that Level 3 had "not established that it possesses sufficient managerial resources, policies, and abilities such that granting the requested certificates would be in the public interest." Specifically, the Commission found that Level 3 LLC did not obtain the necessary permission to enter the land to construct its facilities and, after learning of the problems associated with the installation of the fiber optic cable, "Level 3 LLC failed to take reasonable steps" to identify potentially affected landowners and failed to "establish reasonable means" to address the problem. The Commission concluded that Level 3 LLC's actions involving the installation of the fiber optic

3

cable and its efforts to identify and remedy "potential wrongdoings" related to the installation were not in the public interest. The Commission denied Level 3's motion for rehearing and Level 3 filed this appeal.

Level 3 maintains that the Commission denied its application for certificates of public convenience and necessity to provide local and interexchange telecommunications service in this Commonwealth because of the actions its parent company, Level 3 LLC, took in creating and failing to resolve controversies with landowners over the laying of fiber optic cable. Level 3 argues that denying its application on this basis violates the statutory standards of public interest required for granting such applications, the Commission's own rules for granting such applications, and the provisions of the Telecommunications Act of 1996. For the following reasons, we conclude that the Commission did not apply improper statutory standards, did not violate its rules, and did not violate the Telecommunications Act of 1996.

1. Statutory Standards of Public Interest

By statute, the Commission is required to make a finding that granting a certificate to provide local or interexchange telecommunications service is in the public interest. Code § 56-265.4:4(A), relating to interexchange service, provides in pertinent part:

4

The Commission may grant certificates to competing telephone companies . . . for interexchange service where it finds that such action is justified by public interest, and is in accordance with such terms, conditions, limitations, and restrictions as may be prescribed by the Commission for competitive telecommunications services.

(emphasis added). Subsection (B)(1) of that section governs certificates for the provision of local exchange service and provides in pertinent part:

In determining whether to grant a certificate . . . the Commission may require that the applicant show that it possesses sufficient technical, financial, and managerial resources. Before granting any such certificate, the Commission shall: (i) consider whether such action reasonably protects the affordability of basic local exchange telephone service . . . and reasonably assures the continuation of quality local exchange telephone service; and (ii) find that such action will not unreasonably prejudice or disadvantage any class of telephone company customers or telephone service providers, including the new entrant and any incumbent local exchange telephone company, and is in the public interest.

(emphasis added). The parties agree that both provisions are unambiguous and, accordingly, the language is to be given its ordinary meaning and intent. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

Level 3 asserts that the phrase "such terms, conditions, limitations, and restrictions as may be prescribed by the Commission" in subsection (A) modifies the public interest

5

finding required by that subsection. According to Level 3, the Commission adopted a rule, 20 VAC 5-411-30, to implement this section. Therefore, Level 3 contends, the "terms, conditions, limitations, and restrictions" contained in the Commission's rule define the statutory public interest standard. We disagree.

The language of the statute does not support Level 3's position. The statute identifies two findings the Commission must make when granting an interexchange certificate. These findings are stated in the conjunctive. Under the plain language of the subsection, the requisite finding of "public interest" is an independent finding and not limited by other portions of the subsection. Accordingly, we reject Level 3's construction of Code § 56-265.4:4(A).

The public interest inquiry contained in subsection (B)(1), according to Level 3, is limited to consideration of whether the grant of the certificate will "unreasonably prejudice or disadvantage" telephone customers or other telephone service providers. Level 3 contends that subsection (B)(1) allows the Commission to require information about an applicant's management resources, but does not allow the Commission to consider that information as part of the public interest analysis when considering applications for provision of local exchange service. Again, we disagree.

The proper construction of the subsection requires that the Commission make two findings before a certificate can be granted. It must find that "such action," the granting of the certificate, (1) does not unreasonably prejudice or disadvantage other telephone customers and companies; and (2) is in the public interest. The language of the subsection does not limit the public interest inquiry to the impact of the certificate on other telephone customers and companies. Furthermore, in construing a statute, all the words used are presumed to have an effect. Raven Red Ash Coal Corp. v. Absher, 153 Va. 332, 335, 149 S.E. 541, 542 (1929). The subsection unequivocally requires the Commission make a finding regarding the impact of the certificate on other customers and companies. Requiring a second finding on the same basis as part of the public interest inquiry, as Level 3 asserts, would be superfluous and would render the language referring to a finding of public interest meaningless.

Accordingly, we conclude that the public interest determination required by subsection (B)(1) of Code § 56-265.4:4 is an independent finding, not limited by other portions of the subsection.

2. Commission Rules

Level 3 also argues that the Commission failed to follow its own rules. Level 3 maintains that, in considering

7

management resources necessary for a local exchange certificate under subsection (B), the Commission was limited to the management issues addressed in the Commission's rule promulgated to evaluate applications for local exchange service. That rule, 20 VAC 5-417-20(G), requires information showing the applicant's ability "to render local exchange telecommunications services." Level 3 LLC's actions in laying fiber optic cable are not related to the rendering of such services, according to Level 3 and, therefore, by considering these actions, the Commission violated its rule.

We reject this argument. The Commission's rule, 20 VAC 5-417-20(G), prescribes the information an applicant must submit in its application for a certificate to provide local exchange service. Nothing in that rule limits the Commission to the information contained in the application when it is considering whether to grant the certificate. Furthermore, the Commission in its order in this case determined that the installation of telecommunications facilities including the laying of fiber optic cable was part of the applicant's rendering of telecommunication services. The Commission's interpretation of its own rules is entitled to deference, see generally 1 Richard J. Pierce, Administrative Law Treatise, § 6:11 at 394-404 (4th ed. & Supp. 2004), and we find nothing in the Commission's determination that would support our

reversal of the interpretation.  Finally, the Commission by rule could not supersede or limit the statutory standards for granting a certificate, standards which we have held include consideration of the public interest.

Accordingly, we conclude that the Commission's consideration of Level 3's application for a certificate to provide local exchange service was not limited to the information required by 20 VAC 5-417-20(G).

### 3.  Telecommunications Act of 1996

The Telecommunications Act of 1996 provides in pertinent part:

> (a) In general.  No state or local statute or regulation . . . may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
> (b) State regulatory authority.  Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
> (c) State and local government authority. Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

47 U.S.C. § 253.  Level 3 asserts that the Commission's expansive definition of public interest gives the Commission "unfettered discretion" in denying the applications at issue and that this "unfettered discretion" constitutes a "barrier to entry" prohibited by 47 U.S.C. § 253(a).

In support of its argument, Level 3 cites a number of cases finding that "unfettered discretion" by a municipality violated 47 U.S.C. § 253(a).  New Jersey Payphone Ass'n, Inc. v. Town of West New York, 130 F.Supp.2d 631, 640 (D. N.J. 2001); TCG New York, Inc. v. City of White Plains, 305 F.3d 67 (2d Cir. 2002) cert. denied, 538 U.S. 923 (2003); City of Auburn v. Qwest Corp., 260 F.3d 1160 (9th Cir. 2001); Qwest Corp. v. City of Santa Fe, 224 F.Supp.2d 1305 (D. N.M. 2002). However, Level 3's supporting case law concerns application of subsection (c) of 47 U.S.C. § 253 to actions of local government.  See New Jersey Payphone, 130 F.Supp.2d at 639; TCG of New York, 305 F.3d at 77; City of Auburn, 260 F.3d at 1177; and Qwest Corp., 244 F.Supp.2d at 1317-18.  The Commission's actions at issue come within the provisions of subsection (b) of 47 U.S.C. § 253 which provide a "safe harbor" for state regulations based on protection of the interest of public welfare and safety.  As the Commission

10

notes, there is a vast difference in authority protected by subsections (b) and (c):

> [T]he division between (b) and (c) seems to define the boundaries of each body's regulatory authority: it suggests that states may regulate broadly with respect to public safety and welfare, service quality, and consumer protection, while local governments, in addition to any powers specifically delegated by the state, have narrower residual authority to manage and demand compensation for the use of their rights of way.

Cablevision of Boston, Inc. v. Public Improvement Comm'n of the City of Boston, 184 F.3d 88, 98 (1st Cir. 1999).

The only limitation on the broad exception set out in 47 U.S.C. § 253(b) of the Telecommunications Act of 1996 is that the decisions or procedures must be competitively neutral. See US West Communications, Inc. v. Arizona Corporation Commission, 34 P.3d 351, 355 (Ariz. 2001); In re Regulation of Operator Serv. Providers, 778 A.2d 546, 558 (N.J. Super. Ct. App. Div. 2001); RT Communications, Inc. v. FCC, 201 F.3d 1264, 1267 (10th Cir. 2000). The public interest standard as applied by the Commission involved the protection of public welfare, was competitively neutral and, therefore, did not violate § 253(a) of the Telecommunications Act of 1996.

### 4. Miscellaneous

The remaining issues raised by Level 3 are also without merit. Level 3 asserts that the Commission erred by considering the disputes between the property owners and Level

11

3 LLC in making its certification determination and, therefore, failed to make appropriate findings of fact and conclusions of law in contravention of Code § 56-265.4:4(B)(2). To the extent the Commission considered the property disputes, it did so in the context of items relevant to the certificating decision — the applicant's managerial resources, policies and abilities, concededly measured by the managerial actions of Level 3 LLC.

We also reject Level 3's argument that it was treated inequitably in violation of Code § 56-265.4:4(B)(3)(ii) because the Commission applied "unique and unjustified criteria" that it did not apply to other applicants. The cited Code section does not apply to Level 3. Subsection (B)(3) contains legislative directives to the Commission regarding policies that the Commission should follow in the regulation of certificated local exchange companies. The provision cited by Level 3 provides that the Commission "require equity in the treatment of the certificated local exchange companies so as to encourage competition based on service, quality, and price differences between alternative providers." Code § 56-265.4:4(B)(3)(ii) (emphasis added). Level 3 is not a certificated local exchange company and this section does not establish policies or standards to be applied to applications for certification.

Accordingly, for the reasons stated, we will affirm the judgment of the Commission denying without prejudice Level 3's application for certificates of public convenience and necessity to provide local and interexchange telecommunications services in the Commonwealth.

Affirmed.