# 𝔚𝔭𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

COMMONWEALTH OF VIRGINIA, AT THE RELATION OF THE
TOWN OF APPALACHIA, ET AL. V. OLD DOMINION
POWER COMPANY, INCORPORATED.

June 6, 1945.

Record No. 2969.

Present, All the Justices.

The opinion states the case.

*H. C. Bolling* and *M. M. Heuser*, for the appellants.

*E. Randolph Williams* and *T. Justin Moore*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On May 1, 1939, with the approval of the State Corporation Commission, the Old Dominion Power Company,

Incorporated, put into effect a schedule of rates for electrical energy furnished throughout Lee and Wise counties in the State of Virginia. Under this schedule the rates for similar service were uniform throughout the territory. On July 1, 1941, the Power Company filed with the State Corporation Commission a schedule, effective on July 23, 1941, reducing its rates in certain specified parts of the territory served, and "in such other towns in which the Company owns, or hereafter acquires, a 20 year electric franchise." In the towns of Appalachia and Norton, in Wise county, the Power Company's franchises had expired, and hence under the terms of the "applicable clause" of the schedule, consumers in these localities were not entitled to the reduction in rates. On July 8, 1943, the town of Norton renewed its franchise to the Power Company and the schedule of reduced rates became effective therein.

In the meanwhile, in April, 1942, R. H. Bolling, suing on behalf of himself and all other consumers and purchasers of electrical energy sold by the company within the corporate limits of Norton and Appalachia, filed their bill in equity against the company in the Circuit Court of Wise county, alleging that the schedule of rates which became effective on July 23, 1941, was unjust and discriminatory as to the consumers in the two towns mentioned, and praying that the Power Company be required to render an accounting and to refund the overcharges exacted of them. The trial court dismissed the bill on the ground that it had no jurisdiction of the subject-matter of the suit. We dismissed the appeal taken because the jurisdictional amount was lacking. *Bolling* v. *Old Dominion Power Co.*, 181 Va. 368, 25 S. E. (2d) 266.

Thereupon the Commonwealth of Virginia, at the relation of the town of Appalachia and other consumers of electrical energy therein, filed a petition against the Power Company in the State Corporation Commission. In substance, it was alleged that the "applicable clause" attached

to the schedule of rates which became effective on July 23, 1941, was designed to exclude the consumers of electrical energy in the town of Appalachia from sharing in the reduction of rates, was unjustly discriminatory as to them, and resulted in overcharges being made against and exacted of them from the date on which the schedule became effective.

The prayer of the petition was that the Power Company be required to ascertain and report the amounts of overcharges made and collected by it from its various customers in the town of Appalachia since the new schedule became effective; that it be required to make reimbursement to the various persons from whom overcharges had been exacted; that the "applicable clause" "be declared void *ab initio*, and that respondent be restrained and enjoined from further attempting to enforce the provisions thereof as to consumers who reside in the town of Appalachia."

The Power Company filed a motion to dismiss the petition on the ground that the Commission was without authority to grant the relief prayed for; that its jurisdiction was limited to the investigation and consideration of rates and the application thereof "to become effective as initial rates or in substitution of rates in effect at the time of the inquiry;" and that it had no authority to declare the rates complained of void retroactively, and no jurisdiction to require an accounting by the company for alleged overcharges made against petitioners, or to make reimbursement to them for such overcharges.

The motion to dismiss was taken under advisement. The Power Company filed an answer and evidence was adduced by both sides. In due time the Commission filed a written opinion sustaining the contention of the Power Company that it had no jurisdiction to grant the relief prayed for, and hence the petition was dismissed. From the order of dismissal the petitioners have been granted an appeal, to which they are entitled as a matter of right.

Code, section 3734, as amended by Acts 1942, ch. 244, p. 354.

While the argument in the briefs has taken a wide range, the issue is really within a narrow compass.

It will be observed that the petitioners do not invoke the exercise of the jurisdiction of the Commission to inquire into existing rates and to prescribe reasonable and proper charges as a substitute for those alleged to be unjust and unreasonable. Hence, we are not here concerned with whether the consumers of. electrical energy in the town of Appalachia are, by reason of the lower rates granted to other consumers in other territories, entitled to a similar reduction. 'That is a matter which should be addressed to the Commission in a proper proceeding filed with it for a reduction of the rates in that locality.

The question* before us is whether, in the present proceeding, the Commission has jurisdiction to declare the rates, which were put into effect in the manner provided by law, and became effective on May 1, 1939, unjust and unreasonable as of July 23, 1941, when the revised schedule was put into effect, and to require the Power Company to refund to its customers in the town of Appalachia the difference between the rates collected under the schedule of May 1, 1939, and those which would have been collected under the new schedule, which, the petitioners say, should, at the same time, have been put into effect in their community? Or, to state the matter tersely, has the Commission jurisdiction to put into effect, retroactively, reduced rates applicable to petitioners, and require the Power Company to refund to them the overcharges collected of them?

We are of opinion that the Commission correctly held that it lacked the jurisdiction to grant such relief.

As was said in *Richmond* v. *Chesapeake, etc., Tel. Co.,* 127 Va. 612, 619, 105 S. E.. 127, "The commission is the creation of the Constitution and has no inherent power. All of its jurisdiction is conferred either by the Constitu-

tion or is derived from statutes which do not contravene the Constitution."

Jurisdiction of the Commission with respect to rates and charges of transportation and transmission companies is set forth in section 156, subsection (b), of the Constitution, which reads as follows:

"The commission shall have the power and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies; and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements the commission may, from time to time, alter or amend."

Section 156, subsection (c), provides: " * * * The commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the State has the right to prescribe the rates and charges in connection therewith, * * * ."

Pursuant to the reserved authority under the latter subsection, the General Assembly has enacted various statutes conferring jurisdiction on the Commission to fix the rates, tolls and charges of public utilities operating in this State.

Code, section 4066 (as amended by Acts 1924, ch. 375, p. 538, Acts 1927, Ex. Sess., ch. 36, p. 123), provides for the manner in which changes in the schedules of rates of a

public utility shall be put into effect. It requires the public utility to file with the State Corporation Commission and to keep open to public inspection its schedules of rates and charges. "No change shall thereafter be made in any schedule, * * * so filed, except after thirty days' notice to the commission, and to the public, in such manner as the commission may require, and all such changed rates, tolls, charges, rules and regulations shall be plainly indicated upon existing schedules or by filing new schedules in lieu thereof not less than thirty days prior to the time the same are to take effect; provided, that the commission may, in particular cases, authorize or prescribe a less time in which changes may be made".

Authority is further given the commission to "suspend the enforcement of any or all of the *proposed* rates, tolls, charges, rules or regulations, for a period not exceeding sixty days, during which time it shall investigate the reasonableness or justice of the proposed rates, tolls, charges, rules and regulations and thereupon fix and order substituted therefor such rates, tolls, charges, rules and regulations as shall be just and reasonable." In "exceptional cases," where the commission is unable to conclude its investigation or hearing within the period of sixty days, it may, "for good reasons shown and spread upon the record, further suspend from time to time the operation of the *proposed* rates, tolls, charges, rules or regulations for such moderate and reasonable periods as may be requisite and necessary to complete the investigation". (Italics supplied.)

The section then provides: "Unless the commission so suspends said schedule of rates, tolls, charges, rules and regulations, or changes thereof, the same *shall go into effect* as originally filed by the public utility, upon the date specified in the schedule, subject, however, to the power of the commission, upon investigation thereafter, to fix and order substituted therefor such rate or rates, tolls, charges, rules, or regulations as shall be just and reasonable, as

provided in sections four thousand and seventy-one and four thousand and seventy-two of the Code of Virginia, * * * ." (Italics supplied.)

"From any action of the commission in prescribing rates, charges, rules and regulations or changes thereof, an appeal may be taken by the corporation whose rates, tolls, charges, rules and regulations or changes thereof are affected, or by any person deeming himself aggrieved by such action * * * ."

By Acts of 1928, ch. 222, p. 726 (Michie's Code of 1942, section 4065a), it is provided, "That the State Corporation Commission, in the exercise of its discretion, may permit any public utility corporation to put into effect any proposed revision of its rate schedules, or any part thereof, without notice when the proposed revision effects no increases."

Code, section 4071, provides: "If upon investigation the rates, tolls, charges, schedules, or joint rates of any public utility operating in this State shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or to be preferential or otherwise in violation of any of the provisions of law, the State Corporation Commission shall have power to fix and order substituted therefor such rate or rates, tolls, charges, or schedules as shall be just and reasonable."

By Acts of 1934, ch. 246, p. 365 (Michie's Code of 1942, section 4071a), the Commission is given the authority, "pending an investigation," to "enter a temporary order," after notice to the public utility, "fixing a temporary schedule of rates" under certain specified conditions.

■ There is nothing in any of the statutes to which we have referred which either expressly or impliedly gives the Commission authority to give retroactive effect to rates which may be substituted by it for the existing rates of any public utility. On the contrary, the procedure outlined, requiring notice to the public and to the utility, and "an investigation" and hearing thereafter on the "proposed"

rates, and the conditions upon which they "shall go into effect," shows that the statutes are designed to fix rates for the future.

Indeed, the constitutional mandate of section 156, subsection (b), that "the commission shall, from time to time, *prescribe*, and enforce against such companies, * * * such rates, charges, * * * " (italics supplied), clearly indicates that the action of the Commission shall have a prospective rather than a retrospective effect. According to Webster's International Dictionary, 2d Ed., "prescribe" means: "To lay down authoritatively as a guide, direction, or rule of action."

Nor can we agree with the contention of the appellants that Code, section 3727, authorizes the Commission to grant to them the relief prayed for. This section provides: "The commission shall have power and authority *in all matters of which it has jurisdiction under the Constitution, or the laws of this Commonwealth*, to render and enter up judgment for fines and penalties, or for the recovery of money, in any complaint, proceeding, contest, or controversy, whether instituted of its own motion or otherwise, and to issue process of execution thereon, which may be levied and executed in like manner as executions awarded and issued upon the judgments or decrees of the courts of law or equity of this Commonwealth. * * * " (Italics supplied.)

Clearly, the authority of the Commission to "enter up judgment" "for the recovery of money" is here limited to those matters of which it has jurisdiction.

The view which we have adopted is clearly supported by the principles laid down in *Mathieson Alkali Works* v. *Norfolk, etc., R. Co.*, 147 Va. 426, 137 S. E. 608. There the State Corporation Commission entered an order, the effect of which was to condemn retroactively certain freight rates which it had previously approved. Based upon this order, certain shippers filed actions against the carriers involved, in the Law and Equity Court of the city of Richmond, to

recover the overcharges collected of them under the condemned rates. The lower court sustained the motion of the carriers to dismiss the suit on the ground that the Commission had no authority to enter the order retroactively condemning the rates formerly approved by it. The shippers appealed to this court and we sustained the holding of the trial court.

We pointed out (147 Va., at page 439) that while under the Federal statutes the Interstate Commerce Commission is given the "express power, * * * to declare rates unreasonable and discriminatory retroactively, and to award reparation," the State Corporation Commission, though clothed with the power "to authorize or prescribe rates," has been given "no express grant of power to declare them unreasonable retroactively."·

The shippers contended that the Commission must have been clothed with the *implied* power to grant this relief, or else they were left without remedy to recover extortionate charges made of them by a carrier under rates subsequently found to be discriminatory. The same argument is made before us in the case at bar.

This court answered that contention by pointing out (147 Va., at pages 440-443) that under the Virginia Constitution and statutes, the shippers' rights are protected by affording them the opportunity of contesting before the Commission the reasonableness of the rates at the time they are put into effect, and that having once been established, such rates are conclusively presumed to be reasonable until they are thereafter changed in the manner provided by law.

The holding in that case was thus summarized (147 Va., at page 447): "Our conclusions, as indicated, are, that in Virginia rates are Commission made, and as long as they are in force they are conclusively presumed to be reasonable; that the Corporation Commission has no power to declare them unreasonable retroactively once they are legally established; * * * ."

The above case was decided in 1927. That its principles

have met·with legislative approval is evidenced by the fact that although the statutes dealing with rates of transportation and transmission companies have since been frequently amended, no statute has been enacted which gives the Commission the express authority to condemn retroactively rates once legally established.

What is said in *Mathieson Alkali Works* v. *Norfolk, etc., R. Co., supra,* is equally applicable to the case at bar. The statutes to which we have referred, particularly Code, sections 4066 and 4071, give the consumer ample opportunity of contesting before the Commission the reasonableness of the rates at the time of the proposed changes. After rates have been established in the manner prescribed by law, they are presumed to be reasonable and the Commission has no power to declare them unreasonable retroactively.

But the petitioners argue that they were afforded no opportunity of a hearing with respect to the schedule of rates which became effective on July 23, 1941, because it was put into effect under the provisions of the Act of 1928, ch. 222, p. 726 (Michie's Code of 1942, section 4065a), which authorize the Commission to permit a public utility corporation "to put into effect any proposed revision of its rate schedules, or any part thereof, without notice when the proposed revision effects no increases."

The answer to that contention is that this schedule did not affect the rates of the petitioners. No change was thereby made in their rates. The rates of which they complain, as we have seen, became effective on May 1, 1939.

As the Commission in its written opinion in the present case aptly said: "The power to regulate rates of public utilities is a continuing power to meet changing conditions of the future. It may be exercised in adjusting rates for the future, from time to time, as may be fair and reasonable in the interest of the public" as a result of changing conditions. As we have observed, whether the establishment of lower rates in the surrounding community by the schedule of July 23, 1941, entitled the petitioners to similar relief is a

matter which should be addressed to the Commission in a proper proceeding filed with it for a reduction of their rates.

In our opinion, the order of the Commission is plainly right and it is, therefore,

*Affirmed.*