# Richmond

## Peck Iron & Metal Company, Incorporated, Etc. v. Colonial Pipeline Company.

January 17, 1966.

Record No. 5937.

Present, All the Justices.

712

*George B. Little* and *Collins Denny, III* (*Harold J. Goodman; Denny, Valentine & Davenport*, on brief), for the plaintiff in error.

*Ralph H. Ferrell, Jr.* and *Hugh V. White, Jr.* (*John W. Riely; Evans B. Brasfield; Jack Vickrey; Howard D. McCloud; Hunton, Williams, Gay, Powell & Gibson*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

· Colonial Pipeline Company filed in the court below its amended petition seeking to condemn certain easements for the construction and maintenance of a pipeline for the transportation of petroleum products as a common carrier over the land of Peck Iron & Metal Company, Incorporated, in the city of Chesapeake. The petition alleged that Colonial is a "Virginia public service corporation" whose business is the transportation of petroleum products as a common carrier for the public; that the easements sought to be condemned are necessary for its use in serving the public, and that it is authorized by Code, § 56-49 as amended (Repl. Vol. 1959; Supp. 1964), to acquire them by eminent domain.

Peck filed a special plea, answer and grounds of defense, denying that Colonial is a public service corporation vested with the power of eminent domain and that the easements are sought for a public use. Moreover, it alleged that since Colonial had not obtained from the State Corporation Commission a certificate of public convenience and necessity, the Circuit Court of the city of Chesapeake was without jurisdiction of the proceeding.

After hearing the evidence ore tenus the lower court entered an order overruling Peck's jurisdictional objections and holding that the

easements proposed to be taken are necessary for the use and purposes of the petitioner, that they are for a public use, and that the petitioner has the power to acquire them by eminent domain. The order further directed the summoning of commissioners for the trial of the issue of just compensation due to Peck. On the same day the court entered an order granting Colonial the right of immediate entry on the property upon the payment of the sum of $10,500 into court. The commissioners determined that $1,500 was due Peck for the value of its property taken and $4,000 for damages to the residue. Over Peck's objection an order was entered confirming this report. We granted Peck an appeal.

In its assignments of error Peck challenges the holding of the lower court (1) that the General Assembly has delegated to Colonial the power of eminent domain; (2) that the taking of these easements across Peck's land is for a public use; (3) that the jurisdiction of the court to entertain this proceeding was not conditioned upon Colonial's obtaining from the State Corporation Commission a certificate of public convenience and necessity.

The pertinent facts are not in dispute. Colonial is a domestic corporation of both Virginia and Delaware. It was chartered and organized as a public service corporation under the laws of the State of Virginia and its powers and purposes in this State are thus stated in its charter:

"In Virginia, to construct, own and operate pipelines for the transportation of crude petroleum, and the products or by-products thereof, as a public service corporation and as a common carrier; and, insofar as permitted by the law of Virginia, to carry on the objects and purposes specified in each of the foregoing clauses of this article. * * * "

Colonial carries refined petroleum products through its pipelines from input points in Texas, Louisiana and Mississippi to Linden, New Jersey, and to intermediate points in thirteen other States and the District of Columbia. It serves eleven locations in Virginia, including the city of Chesapeake. It does not own the products which are carried through its lines but receives and carries those of any shipper which meet its requirements and the regulations of the Interstate Commerce Commission. Colonial's operations are subject to the provisions of the Interstate Commerce Act (49 U.S.C., §§ 1-26), under which it is required to operate as a common carrier. It has filed with the Interstate Commerce Commission a schedule of

tariffs which establishes the rates and terms under which it is required to serve as a common carrier the locations along its lines.

The principal questions presented by this appeal are: (1) has Colonial been delegated the power of eminent domain, and (2) is the taking of these easements over Peck's land for a public use?

Peck's position is that Colonial is not vested with the power of eminent domain; that under Code, § 56-49 as amended (Repl. Vol. 1959; Supp. 1964), under which Colonial claims, that right is intended to apply, and indeed constitutionally can only apply, to those public service corporations whose facilities are devoted to a public use; that there is no showing that Colonial's facilities are so devoted, and no showing of a public necessity for the taking of private property for its purposes. Moreover, Peck says, there is no required legislative control of the purported public use of Colonial's facilities. Finally, Peck says, Colonial's right to exercise the power of eminent domain in the present proceeding was conditioned upon its obtaining from the State Corporation Commission a certificate of public convenience and necessity under Code, § 56-265.2 (Repl. Vol. 1959), which was not done.

The position of Colonial is that it is a public service corporation and as such has been delegated the right of eminent domain under § 56-49 as amended, that the exercise of that right in this case is for a public use, that its pipeline serves the public as a common carrier of petroleum products, that there is a public need for such pipeline which cannot be met except by the exercise of the right of eminent domain, and that the exercise of that right is adequately guarded and controlled by legislative authority. Colonial denies that its right to exercise the power of eminent domain in the present case is conditioned upon its obtaining a certificate of public convenience and necessity.

We agree with the position of Colonial. As has been said, that company was chartered and organized as a public service corporation. In accord with Code, § 13.1-50 (Repl. Vol. 1964), its charter states its purpose to conduct a single public service business, namely, "to construct, own and operate pipelines for the transportation of crude petroleum, and the products or by-products thereof, as a public service corporation and as a common carrier." Code, § 56-1 (Repl. Vol. 1959), specifically includes pipeline companies within the definition of public service corporations. Clearly, then, by the terms

of its charter and the relevant statutes, Colonial is a Virginia public service corporation.

Public service corporations authorized to conduct a public service business in Virginia have been delegated the right to acquire property by eminent domain under Code, § 56-49, as amended by Acts of 1962, ch. 222, p. 332. The pertinent portion of this section reads:

"In addition to the powers conferred by Title 13.1, each public service corporation of this State organized to conduct a public service business * * * shall have the power:

*   *   *   *   *   *

"(2) To acquire by the exercise of the right of eminent domain any lands * * * necessary * * * for its use in serving the public, * * *."

The critical inquiry is whether the taking of these easements by Colonial is necessary for its use in serving the public, that is, whether the taking is for a public use.

These constitutional limitations on the delegation of the power of eminent domain have been fixed by our former decisions: (1) the taking must be for a public use; private property cannot be taken for private use; (2) the use must be needful for the public; and (3) the rights of the public to use the facilities must be adequately protected. 6 Mich. Jur., Eminent Domain, § 16, p. 701 *ff.; Id.,* § 19, p. 705 *ff.; Id.,* § 20, p. 707; *Id.,* § 21, p. 708; *Id.,* § 22, p. 708; *Jeter* v. *Vinton-Roanoke Water Co.,* 114 Va. 769, 76 S. E. 921, Ann. Cas. 1914C, p. 1029; *Boyd* v. *Ritter Lumber Co.,* 119 Va. 348, 89 S. E. 273, L.R.A. 1917A, 94; *Light* v. *City of Danville,* 168 Va. 181, 190 S. E. 276.

In our opinion, the delegation of the power of eminent domain to Colonial meets these requirements and the taking of these easements over Peck's land is for a public use.

In *Dismal Swamp R. Co.* v. *Roper Lumber Co.,* 114 Va. 537, 546, 77 S. E. 598, we pointed out that, " 'The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is, or may be, exercised. If it is a public way in fact, it is not material that but few persons will enjoy it. * * *' " Or, as was said in *Light* v. *City of Danville, supra,* 168 Va. at 209, 190 S. E. at 287, "The right of the public to receive and enjoy the benefit of the use is the determining factor whether the use is public or private."

Colonial's charter provides that it is a "public service corporation" whose services and facilities are available to all the public. Under the

express terms of that instrument it operates "as a common carrier," and can only operate in that manner. As has been said, all persons desiring to ship petroleum products by Colonial's facilities and meeting its requirements and the regulations of the Interstate Commerce Commission will be permitted to do so. Thus the right of the public to use its facilities is guaranteed by its charter, the statutes of this State and the Interstate Commerce Act.

The record before us shows that there is a public need for the services provided by Colonial's pipeline. It is engaged in the transportation of highly used commodities, the economical and efficient transportation of which is obviously in the public interest. There is evidence that shippers have requested this type of transportation. By its tariff filed with the Interstate Commerce Commission, Colonial established that it provides services as a common carrier for all shippers of these commodities in thirteen States and the District of Columbia, from the Gulf of Mexico to the New York harbor area. It is also shown that at all times the public in the areas served by Colonial's pipelines, through these facilities, will be guaranteed an uninterrupted supply of petroleum products. Obviously, such a pipeline company must have rights of way from the source of supply to the places of consumption. Where such rights of way cannot be obtained by agreement they must be acquired by eminent domain.

It further appears that the public use of Colonial's facilities is adequately guarded and protected by the laws of this State. Section 156(b) of the Constitution of Virginia vests in the State Corporation Commission "the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies; * * *." This constitutional provision is implemented by Code, § 56-6 (Repl. Vol. 1959), which empowers the State Corporation Commission, among other things, "to compel any public service corporation to observe and perform any public duty imposed upon public service corporations by the laws of this Commonwealth."

Code, § 56-103, authorizes the State Corporation Commission upon the complaint of any person made to it of any unjust discrimination in carrying freight which comes from, or goes beyond, the boundaries of the State by any transportation company, to investigate such complaint and if the same be sustained to bring it to the attention of

the Interstate Commerce Commission for redress in accordance with the provisions of the Act of Congress establishing the Interstate Commerce Commission.

Additional regulatory measures applicable to pipeline companies were enacted at the 1964 session of the General Assembly. By Chapter 523, p. 807, Code § 56-259 (Repl. Vol. 1959), was amended to specify what provisions must be included, and § 56-260.1 was added to specify certain provisions which may not be included, in contracts for easements for pipelines "transmitting petroleum products" across lands in this State. Code, § 58-588 (Repl. Vol. 1959), was amended to provide for the assessment of taxes on such companies. (Acts of 1964, ch. 217, p. 286). *Colonial Pipeline Company v. Commonwealth*, 206 Va. 517, 145 S. E. 2d 227 (decided November 29, 1965).

On the whole, we agree with the lower court that the power of eminent domain has been lawfully delegated to Colonial, that the taking of the easements over Peck's land is for a public use, and that such easements may be acquired in the present eminent domain proceedings.

We also agree with the lower court that Colonial's exercise of the right of eminent domain in the present instance is not conditioned upon its obtaining from the State Corporation Commission a certificate of public convenience and necessity under § 56-265.2. This section provides:

"It shall be unlawful for any public utility to construct, enlarge or acquire, by lease or otherwise, any facilities for use in public utility service, except ordinary extensions or improvements in the usual course of business within the territory in which it is lawfully authorized to operate, without first having obtained a certificate from the Commission that the public convenience and necessity require the exercise of such right or privilege. Such certificate shall be issued by the Commission only after formal or informal hearing and after due notice to interested parties."

The definition of the "public utility" to which the section applies is thus defined in § 56-265.1 (b) of the Code:

" '*Public utility*' means any company which owns or operates facilities within the Commonwealth of Virginia for the generation, transmission or distribution of electric energy for sale, for the production, transmission, or distribution, otherwise than in enclosed portable containers, of natural or manufactured gas for sale for heat,

light or power, or for the furnishing of telephone service, sewerage facilities or water. Provided that the term 'public utility' shall not include any company furnishing sewerage facilities or water to less than fifty customers."

Clearly, Colonial is not within this statutory definition because in this State it will not and cannot generate, transmit or distribute any of the things, or perform any of the services, therein stated. Under the terms of its charter its powers in this State are limited "to construct, own and operate pipelines for the transportation of crude petroleum, and the products or by-products thereof, as a public service corporation and as a common carrier." All of the evidence before us confirms this as the only purpose for which the company is chartered in Virginia and for which the easements across Peck's land are to be taken.

We find no error in the rulings of the lower court and the judgment is

*Affirmed.*