## Richmond

MARY KRICORIAN v. THE CHESAPEAKE AND POTOMAC
TELEPHONE COMPANY OF VIRGINIA, ET AL.

September 2, 1976.

Record No. 751119.

Present, All the Justices.

*Edward A. Marks, Jr.* (*Sands, Anderson & Marks,* on brief), for plaintiff in error.

*Joseph M. Spivey, III* (*Hunton & Williams,* on brief), for (The) Chesapeake and Potomac Telephone Company of Virginia.

No briefs for Harry I. Schutte, Jr., R. Westwood Winfree, Harry Shaia, Jr., and Leonard A. Paris, Trustees, defendants in error.

COCHRAN, J., delivered the opinion of the court.

The Chesapeake and Potomac Telephone Company of Virginia (C & P) filed its petition in the trial court under Title 56, Chapter 2, and Title 25, Chapter 1.1, of the Code of 1950, as amended, to acquire by condemnation, for additional building space to house telephone equipment, fee simple title to certain land, with an apartment building thereon, owned by Mary Kricorian (the landowner), located at the southwest corner of Stuart Avenue and Robinson Street in the City of Richmond, and designated as No. 2601 Stuart Avenue. The landowner filed an answer with affirmative defenses challenging the jurisdiction of the trial court on the grounds that the uses alleged in the petition were not necessary for public purposes and that petitioner had no authority to condemn property for the purposes specified.

On January 15, 1975, the trial court conducted a hearing on the jurisdictional issues, but reserved decision. Subsequently, C & P filed its petition for the right of immediate entry which, after a hearing, the court granted by order entered February 24, 1975. On March 7, 1975, the court entered an order ruling that the property sought by C & P was necessary for its uses and purposes in serving the public, and appointing commissioners to try the issue of just compensation. The landowner has appealed the final order entered on June 4, 1975, which approved the commissioners' award of $44,500 for the property and vested title thereto in C & P.

By her assignments of error the landowner has raised two questions, (1) whether the taking was excessive, unlawful and unconstitutional, and (2) whether C & P was required to comply with the provisions of the Utility Facilities Act (Code §§ 56-265.1, et seq.) by obtaining approval from the State Corporation Commission before initiating the condemnation proceeding.

The facts are undisputed. For many years C & P had operated a switching center in its building at No. 2617 Stuart Avenue, located on a lot fronting 100 feet on the south side of Stuart Avenue, and running back 179.75 feet to a 20-foot alley. This switching facility serviced approximately 30,000 telephones. In order to meet the growing demand for service in the area, C & P, after considering six alternative plans, five of which did not require acquisition of the Kricorian property, adopted the present plan providing for construction of a new switching center near the eastern end of the block, which could service 40,000 to 45,000 telephones. Upon completion of the new

facility C & P planned to demolish its old building and temporarily use the space for off-street parking.

A C & P planning engineer, M. P. Cummings, Jr., called as an adverse witness by the landowner, estimated that the proposed new building would suffice for 8 to 10 years, after which expansion to the west would be required and, in approximately 20 years, further expansion onto the space formerly occupied by the old building might be expected. To that end C & P purchased all the properties lying between No. 2617 and No. 2601, and, after attempting without success to purchase No. 2601 from the landowner, instituted this condemnation proceeding.

Cummings testified that, although no part of the proposed new building would rest on the landowner's property, a cable vault would be located underground on that lot to contain cables brought there from subscribers and from other C & P facilities. He explained that the new building was designed to expand from east to west, and the cables must enter in the same direction "to feed under the [main] frame. It is not feasible to bring them in any other way". He further testified that the new building could not be turned around to expand from north to south, which would permit the cables to be brought in from that direction and would make it unnecessary to acquire No. 2601, because of the inadequate depth of the other C & P properties.

The landowner argues that the condemnation of her property is proscribed by Code §§ 56-463[1] and 56-464,[2] when read in conjunction with Code § 56-49(2).[3] We do not agree.

---

[1] Code § 56-463 (Repl. Vol. 1974) provides:

"**Company may contract for right-of-way, etc.**—Every such company may contract . . . for the right-of-way for erecting, repairing, and preserving its poles and other structures necessary for operating its line, and for sufficient land for the erection and occupation of offices at suitable distances along its line for the public accommodation."

[2] Code § 56-464 (Repl. Vol. 1974) provides:

"**Right of Eminent Domain.**—If a company and such owner cannot agree . . . the company may acquire such right-of-way in the manner provided by the laws of this State for the exercise of the right of eminent domain. The title which may be acquired by a telegraph or telephone company under this section shall be only to a right-of-way for the purpose stated in the preceding section (§ 56-463) . . . ."

[3] Code § 56-49(2) (Repl. Vol. 1974) provides:

"**Powers.**—In addition to the powers conferred by Title 13.1, each public service corporation . . . other than a railroad shall have the power:

. . . .

"(2) To acquire by the exercise of the right of eminent domain any lands or estates or interests therein . . . which are deemed necessary . . . for its use in serving the public, including permanent, temporary, continuous, periodical or future use, . . . : Provided, however, the corporation shall not take by condemnation proceedings

Code §§ 56-463 and 56-464, which deal specifically with telegraph and telephone companies, are expressly limited in their application to the acquisition of easements of right-of-way. Code § 56-49(2), however, grants public service corporations, other than railroads, the power to condemn fee simple title to lands, or any lesser interest therein, for use in serving the public. *See Iron Company* v. *Pipeline Company*, 206 Va. 711, 715, 146 S.E.2d 169, 171 (1966). Nevertheless, under this statute condemnation of a strip of land for a right-of-way within 60 feet of a dwelling may not be effected until a court having jurisdiction has determined that no other reasonable alternative is available.

In the present case, the interest sought to be acquired by C & P was fee simple title to the landowner's entire parcel, including the dwelling thereon, rather than a strip of land for a right-of-way within 60 feet of the dwelling. We need not decide whether the proviso applies only to condemnation of easements, as C & P maintains, or includes the condemnation of fee simple title as well, within 60 feet of dwellings. Under either construction we conclude, from its legislative development, that the restriction, which affords protection to a landowner whose dwelling remains after a condemnation, does not apply where the dwelling is taken.

The proviso, which appears in identical language in Code § 56-347 (Repl. Vol. 1974), setting forth the eminent domain powers of railroad corporations, differs significantly from earlier statutes which for many years prohibited all general improvement companies, including railroads, from invading a dwelling, or any space within 60 feet thereof, without the consent of the owner. *See Hodges* v. *Seaboard & Roanoke R. R. Co.*, 88 Va. 653, 14 S.E. 380 (1892). By Acts 1893-'94, c. 734, railroad corporations were permitted to invade a dwelling or any space within 60 feet thereof, without the consent of the owner, if the condemnation commissioners should decide that it would otherwise be impractical to construct the railroad. The restriction was included in Sec. 4362 in the Code of 1919, and in the Code of 1950 as §§ 25-5 and 25-6, repealed by Acts 1962, c. 426. Reimposed in its present form by Acts 1962, c. 221, as to railroad corporations, and by Acts 1962, c. 222, as to other public service corporations, the proviso now contains no prohibition against invasion of a dwelling. It

a strip of land for a right-of-way within sixty feet of the dwelling house of any person except (a) when the court having jurisdiction of the condemnation proceeding finds, after notice . . . and a hearing thereon, that it would otherwise be impractical, without unreasonable expense, to construct the proposed works of the corporation at another location; . . . ."

thus appears that the legislative intent was to make the restrictive proviso applicable only to condemnations in which the dwelling is not taken.

The landowner recognizes the broad discretion which a condemnor may exercise in determining the specific property and the amount of land to be taken, as we stated in *Virginia Electric, Etc., Co. v. Webb,* 196 Va. 555, 563, 84 S.E.2d 735, 740 (1954). She argues, however, that C & P exercised this discretion arbitraily and capriciously and that such action, therefore, under principles approved in *Stewart v. Highway Commissioner,* 212 Va. 689, 692, 187 S.E.2d 156, 159 (1962), is subject to judicial review. Although we agree that the action is subject to judicial review, the record does not support the landowner's contention that the taking of her property was not necessary and, therefore, was arbitrary and capricious.

It is true that C & P considered various alternatives which would have made it unnecessary to acquire the Kricorian property. But the evidence shows that these plans, after extensive study over a period of many months, were discarded in favor of the plan which was approved. The planning engineer, Cummings, explained that the anticipated need for future expansion of facilities as public demand for telephone service increased, prompted C & P to approve the plan which included the landowner's property. The condemnor's choice of plans was at least fairly debatable, and action is not arbitrary or capricious if exercised honestly and upon due consideration, when there is reason for a difference of opinion. *Virginia Electric, Etc., Co. v. Webb, supra,* 196 Va. at 564, 84 S.E.2d at 740. With no evidence in the record to the contrary, we agree with the finding of the trial court that the necessity for the condemnation was established.

The landowner argues finally that C & P was required to comply with the provisions of Code § 56-265.2[4] of the Utility Facilities Act before initiating this condemnation proceeding. It is conceded that the condemnor made no attempt to comply with this statute, and proceeded on the assumption that compliance was not required. The

---

[4] Code § 56-265.2 (Repl. Vol. 1974) provides:

"**Certificate of convenience and necessity required for acquisition, etc., of new facilities.**—It shall be unlawful for any public utility to construct, enlarge or acquire, by lease or otherwise, any facilities for use in public utility service, except ordinary extensions or improvements in the usual course of business within the territory in which it is lawfully authorized to operate, without first having obtained a certificate from the Commission that the public convenience and necessity require the exercise of such right or privilege. Such certificate shall be issued by the Commission only after formal or informal hearing and after due notice to interested parties."

validity of this assumption depends upon whether the facilities for which C & P sought to acquire the Kricorian property are "ordinary extensions or improvements in the usual course of business" within the condemnor's authorized territory.

The term "improvement" is not a word of art having a fixed and definite meaning, but it must be interpreted and given the meaning indicated by its setting. *Sellers* v. *Bles*, 198 Va. 49, 56, 92 S.E.2d 486, 490 (1956). Under certain circumstances we have held that it is a comprehensive term which includes in its meaning any development whereunder work is done and money expended with reference to the future benefit or enrichment of the premises. *Eppes* v. *Eppes*, 181 Va. 970, 988, 27 S.E.2d 164, 172 (1943).

In the present case, C & P, in replacing an obsolete facility with a new structure, will provide the same service to existing subscribers and new service to additional customers within the precise area in which the corporation, as a public utility, has the privilege and obligation of operating. There is to be no intrusion by the utility into unauthorized territory; there is to be merely an improvement in the facilities by which C & P will furnish telephone service to an increasing number of customers in its assigned area. Indeed, C & P will continue to use the existing switching center until the new building has been completed, equipped and put into operation, so that uninterrupted service to the public will be maintained.

*Mobley* v. *Board of Public Work*, 44 Cal. App. 167, 186 P. 412 (1919), relied upon by the landowner, is inapposite. There, where a city charter permitted the municipal railway system to expend earnings for "extensions and improvements", it was held that this term was not broad enough to permit the purchase of an entirely independent railway system operating on other streets. In the present case, C & P is not seeking to acquire other utilities or to enlarge the area within which it operates. Therefore, we hold that the facilities to be constructed by C & P on the Kricorian property are ordinary extensions or improvements in the usual course of business, within the meaning of the statutory exception, and that compliance by the condemnor with the provisions of Code § 56-265.2 was not required.

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*