Present:   All the Justices

VYVX OF VIRGINIA, INC.
                        OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 990285          September 17, 1999

JOHN W. CASSELL, ET AL.

            FROM THE STATE CORPORATION COMMISSION

                              I.

     In this appeal of an order entered by the State

Corporation Commission ("Commission"), we consider the

validity of a fine that the Commission imposed upon VYVX of

Virginia, Inc. ("VYVX"), and whether the Commission erred in

denying VYVX's application for authority to construct and

acquire fiber optic telecommunications facilities for

intrastate purposes.

                             II.

     Williams Communication, Inc. ("Williams") is a Delaware

corporation which is licensed to conduct business in Virginia.

Williams, through its subsidiaries, conducts a

telecommunications business throughout the United States and

internationally.  In 1997, Williams began to construct a new

fiber optic cable system that would extend from Houston,

Texas, to Manassas, Virginia.  The cable system would be

capable of transmitting 34,000,000 simultaneous long-distance

telephone calls and would be installed between existing gas

pipelines owned by Williams' subsidiary, Transcontinental Gas Pipeline Corporation.

The Federal Communications Commission granted Williams authority to operate its interstate and international telecommunications systems.  Even though Williams intended to provide interstate service on its cable system, Williams also desired to utilize the system to provide intrastate service within Virginia.  In furtherance of its goal to provide intrastate service within Virginia, Williams created a subsidiary, VYVX, which was incorporated in Virginia as a public service corporation.

On April 23, 1997, VYVX filed with the Commission an application for a certificate of public convenience and necessity to provide interLATA telecommunication services within Virginia and to have rates established based on competitive factors.[1]  VYVX stated in its application that it

---

[1] The phrases "interLATA service" and "LATA" are defined in the Telecommunications Act of 1996, 47 U.S.C. § 151, et seq.  "The term 'interLATA service' means telecommunications between a point located in a local access and transport area and a point located outside such area."  47 U.S.C. § 153(21)(Supp. III 1997).  "The term 'local access and transport area' or 'LATA' means a contiguous geographic area—
> (A) established before February 8, 1996, by a Bell operating company such that no exchange area includes points within more than 1 metropolitan statistical area, consolidated metropolitan statistical area, or State, except as expressly permitted under the AT&T Consent Decree; or

"proposes to offer services to the public within Virginia over its own facilities and through resale of services provided by other carriers."  VYVX requested authority to construct, acquire, extend, and operate equipment and facilities to be used in the operation of an intrastate telecommunications public facility.

VYVX also stated in its application that it would own the facilities to be constructed in Virginia.  VYVX sought "authority to offer a full range of intrastate interLATA telecommunications services to the public on a statewide basis within the Commonwealth of Virginia as a non-dominant interexchange carrier."  VYVX further stated in its application that:  "[VYVX] will build and operate its fiber optic telecommunications facilities in Virginia as a public service company.  [VYVX] plans to complete construction of the facilities in Virginia by December 31, 1997, and intends to begin construction as soon as it has obtained all necessary governmental authorizations."  Finally, VYVX stated that Williams "and [VYVX] have authorization to construct interstate telecommunications facilities and to provide interstate services pursuant to rules adopted by the Federal

---

(B) established or modified by a Bell operating company after February 8, 1996, and approved by the [Federal Communications] Commission."  47 U.S.C. § 153(25)(Supp. III 1997).

Communications Commission.  47 C.F.R. § 63.07 (1996).  [VYVX] is filing the instant application to ensure that it has the ability to offer intrastate interLATA services as well."

VYVX attached a copy of its amended and restated articles of incorporation to its application.  Article II of the amended and restated articles of incorporation states:  "The purpose for which the Corporation is formed is to construct, own and operate telecommunications facilities, including fiber optic lines, for the purposes of providing audio, video and data telecommunications transmission services and other telephone services as a public service corporation, public utility and communications common carrier."

As required by an order issued by the Commission, VYVX caused notice of its application to be published in newspapers having general circulation throughout Virginia and mailed notices to certain public officials.  On January 14, 1998, the Commission issued an order granting VYVX authority to provide intrastate, interexchange services subject to certain restrictions contained in the Commission's rules governing the certification of interexchange carriers and certain applicable statutes.  The Commission's January 14, 1998 order stated that the Commission would consider separately VYVX's requested certification to construct its proposed facilities.

4

The Commission directed VYVX to publish notice of its request to construct facilities throughout the localities in which it proposed to construct those facilities. VYVX requested an amendment to its application to reflect its desire to construct a lateral fiber optic telecommunications line. The Commission granted VYVX's request and ordered that the public notice include the areas affected by the construction of the additional lateral line.

In response to the notice, the Commission received several comments and complaints. Certain landowners complained to the Commission because VYVX and its agent, Coates Field Service, Inc., had threatened the property owners. VYVX and its agents told the property owners that VYVX would condemn their properties if the property owners did not consent to give VYVX easements necessary for the installation of its cable fiber. For example, Mark E. Decot, a property owner whose land was affected by the installation of the cable, testified at a hearing before the Commission that VYVX threatened to condemn a portion of his land if he refused to convey an easement to it. Diana Orr, who was employed with Coates Field Service, told Decot that if he did not sign a document that she had mailed to him, then his property would be "condemned and . . . taken anyway, so what [he] should do is go ahead and sign it and get as much money

5

as [he] can get out of it right now."  VYVX filed a condemnation proceeding against Decot in the Circuit Court of Orange County.  Decot eventually signed a document with VYVX which gave VYVX the requested easement.

John and Janete Cassell also testified that they were told by VYVX's agents that VYVX would condemn their property if they failed to convey a requested easement.  A stipulation of undisputed facts reveals that VYVX had filed four condemnation proceedings in various circuit courts to acquire easements of right-of-way from property owners.

David R. Clossin, an employee of Coates Field Service, testified that Coates entered into a contract with VYVX to assist it with the acquisition of easements in Virginia.  Clossin testified:  "I work for Coates Field Service, with a business card that we represent VYVX of Virginia."

In September 1997, the Commission, which was of the opinion "that the allegations raised by the complaints constitute 'substantive objections' to [VYVX's application]," ordered VYVX to respond to the landowners' complaints and directed that VYVX "clarify what certification(s) it seeks from the Commission and explain whether . . . since its application seeks authority to construct, acquire, extend, or operate equipment or facilities for use in public utility service, certification pursuant to [Code] § 56-265.2 . . .

6

should be required."  The Commission ordered that VYVX "demonstrate why it should not be ordered to cease condemnation activities until it receives all necessary certificates of public convenience and necessity from the Commission."

VYVX responded to the Commission's order and stated that VYVX proposed to install a fiber optic cable system in Virginia and asserted that it did not need any certification before exercising the right of eminent domain.  Continuing, VYVX requested that the Commission issue a certificate of public convenience and necessity under Code § 56-265.2 which would authorize VYVX to provide intrastate interLATA telecommunications services as a non-dominant interexchange carrier.

On October 17, 1997, the Commission staff asked the Commission to order VYVX to cease its condemnation activities because, as of that date, VYVX had filed four condemnation actions to obtain easements for the installation of its fiber optic cable, and those proceedings were pending in various circuit courts.  On October 21, 1997, VYVX informed the Commission that VYVX would not initiate any further condemnation proceedings until the Commission had acted upon VYVX's application.  Unbeknownst to the Commission and its staff, VYVX and its parent corporation, Williams, were

constructing the proposed cable system that was the subject of VYVX's application.

The Commission, in an order dated November 25, 1997, held that "VYVX is not yet 'lawfully authorized to operate' anywhere in the Commonwealth and . . . its proposed construction is not an ordinary extension or improvement of its facilities, and therefore [VYVX] requires certification," pursuant to Code § 56-265.2.  The Commission held that VYVX did not have the right to exercise the power of eminent domain and directed VYVX to "cease acquisition of property or rights therein, by exercise of, or by implying its right to exercise, eminent domain authority, until such time as the Commission has acted upon its application."

On February 9 and 11, 1998, contractors who were installing the optic fiber cable system severed telephone cable owned by Bell-Atlantic Corporation.  Bell-Atlantic reported these incidents to the Commission which learned, for the first time, that construction had already begun on the facilities that were the subject of the certification proceeding.  The Commission staff filed "a motion for a rule to show cause and a temporary injunction."

VYVX responded to the motion and acknowledged that construction of the cable facilities had begun, but asserted that Williams, and not VYVX, was constructing the facilities.

Continuing, VYVX claimed that Williams was constructing the facilities pursuant to its federal authority and that the facilities would be used for interstate service. VYVX stated in its response that it would use the system to provide intrastate interLATA telecommunications.

The Commission conducted a hearing on the motion for a rule to show cause and also considered VYVX's request for construction certification pursuant to Code § 56-265.2. The Commission held VYVX had violated the Commission's orders of November 25, 1997 and January 14, 1998 because VYVX had assisted its parent corporation, Williams, with the construction of facilities that were the subject of the application.

The Commission entered an order dated October 8, 1998 holding, among other things, that VYVX had essentially completed construction of the facilities for which such authority was sought and that such construction was implemented "knowingly and by design of [VYVX] and, as admitted in the testimony of its own witnesses . . . such construction had begun as early as September 1997" and that the requested construction "is now an accomplished fact."

The Commission implicitly found that VYVX had made certain misrepresentations and misstatements in its application, but the Commission explicitly concluded that

9

those misrepresentations and misstatements did not relate to VYVX's ability to provide interexchange services. Rather, the misrepresentations and misstatements "apply to that part of the application in which VYVX requests a certificate to construct facilities." The Commission denied VYVX's certificate of public convenience and necessity to construct telecommunications facilities and imposed a fine in the sum of $197,000 pursuant to Code § 12.1-33. The Commission suspended $175,000 of the fine, conditioned upon VYVX's compliance with orders or rules of the Commission or any statute of the Commonwealth for a period of five years and the payment of court costs. VYVX appeals.

### III.

VYVX contends that the Commission's order constitutes an unconstitutional burden on interstate commerce. VYVX argues that Williams has authority to construct facilities for interstate telecommunications services and that the fiber optic cable system that was constructed will be used for interstate commerce. Continuing, VYVX says that the "Commission ordered a fine as a penalty for construction of facilities under federal authority to be used in interstate commerce. This it cannot do." We disagree with VYVX.

The Commerce Clause in the United States Constitution grants Congress the power "[t]o regulate commerce . . . among

10

the several states."  U.S. Const. art. I, § 8, cl. 3.  Even though the Commerce Clause speaks in terms of powers bestowed upon Congress, the Supreme Court has held that the Commerce Clause limits the power of the States "to erect barriers against interstate trade."  Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35 (1980).

Discussing the scope of the Commerce Clause, the Supreme Court has stated:

"This limitation upon state power, of course, is by no means absolute.  In the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected.  See e.g., Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 440 (1978); Great A&P Tea Co. v. Cottrell, 424 U.S. 366, 371 (1976).  Where such legitimate local interests are implicated, defining the appropriate scope for state regulation is often a matter of 'delicate adjustment.'  Ibid., quoting H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. [525,] 553 [1949] (Black, J., dissenting).  Yet even in regulating to protect local interests, the States generally must act in a manner consistent with the 'ultimate . . . principle that one state in its dealings with another may not place itself in a position of economic isolation.'  Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 527 (1935).  However important the state interest at hand, 'it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently.'  Philadelphia v. New Jersey, 437 U.S. [617] 626-27 [1978]."

11

Lewis, 447 U.S. at 36.  Accord Maine v. Taylor, 477 U.S. 131, 137-38 (1986); Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 669-70 (1981).

Applying these principles, we hold that the Commission's order which imposed a fine upon VYVX does not contravene the limitations imposed upon the States by the Commerce Clause. VYVX filed an application to operate intrastate facilities.[2] The Commission imposed a fine upon VYVX because VYVX participated in the construction of the facilities even though the Commission had entered orders informing VYVX that certification was necessary before such construction could commence.  The Commission's order is directed solely to violations of VYVX, which is incorporated in Virginia, and which applied for and was granted a certificate to provide intrastate interexchange service within Virginia.  The fine

---

[2] VYVX states that it "is immaterial who built the facilities because [VYVX] and Williams have federal authority to construct facilities for interstate telecommunications service, and the Commission cannot regulate such service . . . ."  VYVX's contention is without merit.  VYVX repeatedly stated before the Commission that it would construct, operate, and own the facilities that would provide intrastate service within Virginia.  We will not permit VYVX to ignore its representations before the Commission and assert a contrary position in this Court.  Additionally, the record reveals that VYVX participated in the construction of the cable network. Decot testified that VYVX personnel participated in the construction activities that occurred on his property. Additionally, Clossin, VYVX's agent, directed construction and was responsible for resolving disagreements with local property owners.

12

that the Commission imposed does not affect Williams, a separate corporate entity.  Williams was not before the Commission, and the Commission did not impose a fine upon Williams.  The Commission's order simply does not restrict Williams' use of its interstate facilities.[3]

IV.

A.

VYVX argues that the Commission's November 25, 1997 order is unenforceable.  This order, among other things, directed that VYVX cease acquisition of real property or rights therein by the exercise of eminent domain authority until the

---

[3] We also note that the Telecommunications Act of 1996, from which Williams derives the power to construct its interstate telecommunications cable, recognizes the authority of the States to manage public rights-of-way.  The Act specifically states:

"(b) State regulatory authority
    "Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
"(c) State and local government authority
    "Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government."
47 U.S.C. § 253 (1999).

Commission acted upon VYVX's application for certificates of public convenience and necessity. VYVX contends that the Commission did not hold a hearing before the entry of that order and, thus, the order is void. Continuing, VYVX challenges the legality of the Commission's subsequent order, dated October 8, 1998, which imposed a fine upon VYVX because, among other reasons, VYVX failed to comply with the November 25, 1997 order. VYVX also asserts that the November 25, 1997 order violated Article IX, § 3, of the Constitution of Virginia and Code § 12.1-28.

At the outset, we will not consider VYVX's constitutional argument because it was not raised before the Commission. Rule 5:25.

Code § 12.1-28 states in relevant part:

> "Before the Commission shall enter any finding, order, or judgment against any person, it shall afford such person reasonable notice of the time and place at which he shall be afforded an opportunity to introduce evidence and be heard."

Our review of the record reveals that the Commission complied with this statute because the Commission accorded VYVX numerous opportunities to be heard. As we have already stated, the Commission entered an order directing VYVX to respond to complaints that property owners had filed. The Commission requested that VYVX declare the legal basis upon which it relied to acquire property by use of eminent domain.

14

VYVX's response did not necessitate the taking of evidence, but, rather, required that VYVX set forth the legal basis for its assertion that it could acquire easements using the power of eminent domain.

VYVX did not deny before the Commission, and does not deny here, that VYVX represented to property owners that it had the power of eminent domain. VYVX admits that it initiated condemnation proceedings. In VYVX's response to the Commission's order, VYVX submitted a written explanation of its purported source of authority to exercise the power of eminent domain.

VYVX did not request an opportunity to present testimony before the Commission, and such testimony would have been unnecessary because the Commission's decision was not predicated upon factual matters, but, rather, on principles of law. And, the Commission afforded VYVX a reasonable opportunity to be heard on the legal questions that were the subject of the Commission's order.

Furthermore, the Commission did not impose the fine upon VYVX until the Commission issued its October 1998 order. Before the entry of that order, VYVX presented evidence, written depositions, legal memoranda, and oral argument to the Commission.

B.

15

We also hold that there is no merit in VYVX's contention that the Commission violated Rule 5:6 of the Commission's Rules of Practice and Procedure. That Rule states in relevant part:

> "Upon petition of any aggrieved party, or upon its own motion if necessary for full relief, the Commission will convert any unresolved valid complaint to a formal proceeding by the issuance of a rule to show cause, or by an appropriate order setting a formal hearing, upon at least ten (10) days notice to the parties, or as shall be required by statute."

This Rule is not implicated here because VYVX did not file a petition requesting that the Commission convert the complaints to a formal proceeding.

### C.

Code § 12.1-33 states in relevant part:

> "Any person failing or refusing to obey any order or any temporary or permanent injunction of the Commission may be fined by the Commission such sum, not exceeding $1,000, as the Commission may deem proper; and each day's continuance of such failure or refusal shall be a separate offense."

VYVX contends that the November 25, 1997 order commanded only that it refrain from exercising and asserting its power of eminent domain, and that VYVX did so. We disagree.

The Commission's November 25, 1997 order stated, among other things, that VYVX must obtain certification from the Commission before it constructs its facility and operates as a utility in this Commonwealth. The Commission, in its October

16

1998 order, concluded that VYVX violated the November 1997 order because it participated in the construction of the facilities even though it had not acquired the necessary certification. The Commission's finding is amply supported by the facts contained in Section II of this opinion. And, we have stated that a finding of the Commission "will not be disturbed by us 'unless it is contrary to the evidence or without evidence to support it.'" Thaxton v. Commonwealth, 211 Va. 38, 43, 175 S.E.2d 264, 268 (1970); Security Bank & Trust Co. v. Schoolfield Bank & Trust Co., 208 Va. 458, 461, 158 S.E.2d 743, 745 (1968). Thus, we hold that the Commission did not err in concluding that VYVX had violated the November 25, 1997 order.

V.

A.

VYVX asserts that the Commission did not have jurisdiction to determine whether a public service company has the power of eminent domain to acquire easements for telecommunication facilities. We disagree with VYVX.

We have stated that the "Commission has no inherent power simply because it was created by the Virginia Constitution; and therefore its jurisdiction must be found either in constitutional grants or in statutes which do not contravene that document." City of Norfolk v. Virginia Electric & Power

17

Co., 197 Va. 505, 514, 90 S.E.2d 140, 146 (1955); Appalachian

Power Co. v. John Stewart Walker, Inc., 214 Va. 524, 528, 201

S.E.2d 758, 762 (1974); see also Commonwealth v. Old Dominion

Power Co., 184 Va. 6, 11-12, 34 S.E.2d 364, 366, cert. denied,

326 U.S. 760 (1945); City of Richmond v. Chesapeake & Potomac

Telephone Co., 127 Va. 612, 619, 105 S.E. 127, 129 (1920).

However, Code § 56-35 states:

"The Commission shall have the power, and be charged
with the duty, of supervising, regulating and
controlling all public service companies doing
business in this Commonwealth, in all matters
relating to the performance of their public duties
and their charges therefor, and of correcting abuses
therein by such companies."

Code § 56-35 confers upon the Commission the duty and the

authority to supervise, regulate, and control public service

companies, including VYVX, in all matters relating to the

performance of their duties and requires that the Commission

correct any abuses by public service companies, such as VYVX.

Here, the Commission had jurisdiction to consider whether VYVX

had abused its status as a public service company by

threatening to exercise the power of eminent domain to acquire

easements from property owners even though VYVX had not yet

received its requested certification from the Commission.[4]

_____

[4] We reject VYVX's contention that Code § 56-35 limits the
Commission's authority to the supervision or regulation of
"the 'public duties' of utilities for which they impose

18

B.

As we have already stated, the Commission held that VYVX did not have the power to exercise the right of eminent domain to acquire easements for its fiber optic lines because it had not been granted a certificate of public convenience and necessity.  VYVX contends that public service corporations have the right to acquire easements for facilities to be used in serving the public and, therefore, it has the right to exercise the power of eminent domain to acquire such easements.  We disagree with VYVX.

Code § 56-49(2) states in relevant part:

"A public service corporation which has not been allotted territory for public utility service by the State Corporation Commission shall acquire lands or interests therein by eminent domain as provided in this subdivision for electric lines, facilities, works or purposes only after it has obtained any certificate of public convenience and necessity required for such lines, facilities, works or purposes under Chapter 10.1 (§ 56-265.1, et seq.) of Title 56."

In deciding the meaning of this statute, we consider the plain language contained therein.  Haislip v. Southern Heritage Ins. Co., 254 Va. 265, 268, 492 S.E.2d 135, 137 (1997); Abbott v. Willey, 253 Va. 88, 91, 479 S.E.2d 528, 530 (1997); Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

'charges' to the public."  VYVX's interpretation of the

19

The plain language of Code § 56-49(2) does not permit a public service corporation which has not been allotted territory for public utility service by the Commission to exercise the power of eminent domain to acquire land or interests therein for electric lines, facilities, works, or purposes until the public service corporation has obtained a certificate of public convenience and necessity from the Commission.  Here, VYVX actually filed condemnation proceedings against landowners to acquire easements even though it had not obtained a certificate of public convenience and necessity.

VYVX contends, however, that Code § 56-49(2) does not apply to it because VYVX "does not propose to acquire property for 'electric' facilities."  Apparently, VYVX believes that the word "electric" which is contained in the phrase "electric lines, facilities, works, or other purposes" modifies the words "facilities, works, or other purposes."  VYVX simply misreads the statute.  A plain reading of the statute indicates that the word "electric" only modifies the word "lines" because of the punctuation contained in that sentence. Even though the General Assembly amended Code § 56-49(2) by eliminating the word "electric" effective July 1, 1999, such amendment does not affect our analysis.  The deletion of the

statute is simply contrary to its plain language.

word "electric" from the statute simply expands the types of lines that fall within the scope of the statutory regulatory scheme.

## C.

VYVX, relying upon Peck Iron & Metal Co. v. Colonial Pipeline Co., 206 Va. 711, 146 S.E.2d 169, cert. denied, 385 U.S. 823 (1966), and Kricorian v. Chesapeake & Potomac Telephone Co., 217 Va. 284, 227 S.E.2d 725 (1976), argues that it acquired the right to exercise eminent domain by virtue of its incorporation as a public service company.  We find no merit in VYVX's contention.

In Peck Iron & Metal Co., we held that a public service corporation was not required under Code § 56-265.1(b) of the Utility Facilities Act to obtain a certificate of public convenience and necessity before exercising the power of eminent domain because the public service company was not a public utility as defined by Code § 56-265.1(b).  Peck Iron & Metal Co., 206 Va. at 717-18, 146 S.E.2d at 173.  This statute states in relevant part:

> "'Public utility' means any company which owns or operates facilities within the Commonwealth of Virginia . . . for the furnishing of telephone service."

Code § 56-265.2 of the Utility Facilities Act states in relevant part:

"A. It shall be unlawful for any public utility to construct, enlarge or acquire, by lease or otherwise, any facilities for use in public utility service, except ordinary extensions or improvements in the usual course of business, without first having obtained a certificate from the Commission that the public convenience and necessity require the exercise of such right or privilege. Any certificate required by this section shall be issued by the Commission only after opportunity for a hearing and after due notice to interested parties."

VYVX, unlike the public service corporation in Peck Iron & Metal Co., is a public utility and, therefore, is subject to the provisions of Code § 56-265.2 which prohibits a public utility from performing certain acts without a certificate of public convenience and necessity issued by the Commission.

In Kricorian, we held that a public utility was not required to comply with the provisions of the Utility Facilities Act by obtaining approval from the Commission before initiating condemnation proceedings. The utility in Kricorian, however, unlike VYVX, exercised the power of eminent domain to acquire property for "ordinary extensions or improvements in the usual course of business" which is expressly permitted by Code § 56-265.2. Kricorian, 217 Va. at 289, 227 S.E.2d at 729. VYVX's request for the construction and extension of facilities does not fall within this statutory exception.

VI.

22

VYVX argues that the Commission erred by denying VYVX's request for a certificate of public convenience and necessity. Continuing, VYVX states that the only reason the Commission gave for denying the requested certificate was that a certificate would not be meaningful since the initial phase of construction had been completed. VYVX also says that this reason is an erroneous application of Code § 56-265.2, and that the Commission's order discriminates against VYVX in favor of other telecommunications companies which construct such facilities in Virginia.

We have held that "[t]he Commission is given broad discretionary authority in determining whether a certificate of public convenience and necessity will be approved." Stafford Serv. Corp. v. State Corp. Commission, 220 Va. 559, 562, 260 S.E.2d 226, 228 (1979); Bralley-Willett Tank Lines, Inc. v. Holtzman Oil Corp., 216 Va. 888, 890-91, 223 S.E.2d 892, 895 (1976). This Court has also stated that "[w]e cannot sit as a board of revision to substitute our judgment for that of the Commission on matters within its province." Bralley-Willett Tank Lines, Inc., 216 Va. at 891, 223 S.E.2d at 895; Atlantic Greyhound Lines of Va., Inc. v. Silver Fox Lines, 204 Va. 360, 363, 131 S.E.2d 284, 286 (1963).

The Commission, upon consideration of the facts and circumstances before it, concluded that the issuance of a

23

certificate of public convenience and necessity would not be meaningful because VYVX had participated in the construction of facilities that were the subject of the application in violation of the Commission's orders. Additionally, the Commission made a specific finding "that the public interest and convenience do not require the exercise by VYVX of the rights and privileges under [Code § 56-265.2]" which include the power to exercise the right of condemnation to construct, enlarge, or acquire, by lease or otherwise, any facilities for use in VYVX's public utility service. We cannot conclude, based upon the record before us, that the Commission abused its broad discretion in determining that the issuance of a certificate would not be in the public interest, particularly in consideration of VYVX's widespread practice of acquiring easements with the threat of the power of eminent domain when it did not possess such power.

We find no merit in VYVX's contention that the Commission's order discriminates against it in favor of other telecommunication companies. VYVX ignores the fact that it was denied a certificate of public convenience and necessity because of its own acts, and not because of favoritism directed towards other telecommunications companies that construct facilities in Virginia. And, the record simply does not support VYVX's claims of discrimination.

VII.

We have examined VYVX's remaining arguments and hold that such arguments are without merit.  Accordingly, we will affirm the Commission's order.

<u>Affirmed</u>.