## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Spotsylvania County

v.

Mineral Springs
Homeowners Ass'n et al.

July 18, 2003

Case No. CL02-391

BY JUDGE WILLIAM H. LEDBETTER, JR.

The issue before the court in this condemnation case is whether the County can take the landowner's entire property or just that portion to be used for the water reservoir, the public purpose for which the County is exercising its power of eminent domain.

### Facts

Except as noted, the pertinent facts are not disputed.

Spotsylvania County is constructing Hunting Run Reservoir to provide additional potable water to its residents. The reservoir, located in the northwestern sector of the County, will inundate portions of Mineral Springs Plantation, a residential development. One of the lots in that development is owned by Valerie C. Johns, the landowner in this proceeding.

Johns owns Lot 78, Section Two, of Mineral Springs Plantation. The lot contains 4.76 acres. When completed, the reservoir will inundate 2.12 acres of

the lot. Another 0.79 acre portion will serve as a buffer along the water line. Thus, the County intends to take 2.91 acres for the reservoir, leaving 1.85 acres contiguous to the reservoir. Nevertheless, the County seeks to condemn the entire lot and advances several theories in support of its position.

Johns concedes the reservoir's public purpose, its necessity, and the County's authority to take 2.91 acres of her land for the reservoir project, paying just compensation for it, but she opposes the County's attempt to condemn the other 1.85 acres.

### Controlling Legal Principles

Eminent domain is the inherent power of government to take private property for public use, subject to reasonable compensation for the taking. *Black's Law Dictionary* (7th ed.), p. 541; 7A M.J., *Eminent Domain*, §§ 3-4.

Virginia does not depend solely upon its inherent powers of sovereignty in the exercise of eminent domain. Rather, that power is expressly recognized in the Constitution of Virginia. Article 1, § 11, of the Constitution of Virginia provides: "The General Assembly ... shall not pass any law whereby private property shall be taken or damaged for public purposes without just compensation, the term public purposes to be defined by the General Assembly."

The power of eminent domain may be delegated by the sovereign to its subdivisions. In Virginia, the authority to exercise the power of eminent domain is expressly delegated to localities by Virginia Code § 15.2-1900 et seq.

To initiate condemnation proceedings, the locality must adopt a resolution stating the public purpose and the necessity for the proposed public use. The County has done that in this case.

Although the necessity and expediency of a public project is a legislative question and is not challenged here, a condemnor's discretion in ascertaining the specific property and the amount of land to be taken is subject to judicial review. *Kricorian v. C. & P. Tel. Co.,* 217 Va. 284, 227 S.E.2d 725 (1976). If the landowner alleges an arbitrary and capricious exercise of discretion in the amount of land to be taken, the landowner is entitled to prove it. The burden of proof is on the landowner because it is presumed that the condemnor is exercising its power of eminent domain in a proper manner. *Kricorian, supra.* If the landowner establishes a prima facie case, the burden shifts to the condemnor to produce sufficient evidence to show that the issue is "fairly

debatable." If the condemnor makes the showing, the court will conclude that the condemnor's discretion was fairly and honestly exercised. If the exercise is proved to be arbitrary and capricious, the court will protect the landowner from the improper taking. See also *Hamer v. School Bd. of Chesapeake*, 240 Va. 66, 393 S.E.2d 623 (1990).

## Status of Proceeding

The County passed a resolution in January 2002 to condemn properties needed for the construction of Hunting Run Reservoir. This condemnation case was initiated on August 27, 2002. A number of landowners were joined as defendants and were properly served with process. Johns was one of the defendants named in the suit.

Johns, as well as the other defendant landowners, filed responsive pleadings. In her response, Johns asserted that public interest does not require the acquisition of the 1.85-acre portion of her lot that the County does not intend to use for the reservoir and the buffer.

As it is permitted to do, the County petitioned for the immediate right of entry upon the various properties. On September 18, 2002, the court entered an agreed order allowing the County an immediate right of entry to 2.91 acres of Johns' parcel.

By agreement of the parties, the court conducted a hearing on June 13, 2003, to adjudicate Johns' assertion that the County's effort to take the remaining 1.85-acre portion is an improper exercise of its power of eminent domain. The hearing included a view, testimony of witnesses, presentation of exhibits, and arguments.[1] Counsel supplemented their arguments with memoranda submitted after the hearing.

## Decision

From the beginning, the County has made a distinction between the 2.91 acres needed for the construction of the reservoir, including the buffer along the water line, and the 1.85-acre "residue" or "remainder."

For example, in a letter of March 12, 2001, the County attorney told Johns:

---

[1] It is important to note that the hearing of June 13, 2003, did not address the necessity of the reservoir. That question has not come up in this litigation. A hearing on such a question was denounced in *Hamer, supra*, because the question is a legislative question with which courts should rarely, if ever, meddle.

Although the reservoir pool will flood only a portion of your property, our engineers have determined that the residue of the lot that will remain will not be of adequate size or configuration to permit construction of the size of structure that you have proposed or that is typical in Mineral Springs Plantation, making it an "uneconomic remnant" within the meaning of state . law.

The plat of Johns' lot, prepared for the County by Lee O. White, shows the flooding up to the 246 foot contour. The *"acquisition line"* (emphasis added) is along the 250 foot contour, thereby providing a buffer along the water line. The plat sets forth the "acreage in water." Combining that acreage with the buffer acreage, the plat states the "acreage acquisition" as 2.91 acres.

The County argues nevertheless that it has the right to take the remaining 1.85 acres because Johns has not proved that the County's acquisition of the remainder is for any purpose other than a public purpose. This argument is circuitous. Merely because the County needs some of Johns' property for a public purpose does not mean that it can take all of Johns' property. As noted above, even where a public purpose has been established and the necessity is established, the amount of land to be taken is subject to judicial review so that the condemnor may not exercise its considerable discretion in an arbitrary and capricious manner. *Kricorian, supra.* That is the issue here.

Next, the County says that it can take the 1.85-acre residue to "prevent future detriment." By that, the County means that it needs to protect the reservoir. Apparently, the County assumes that Johns will eventually seek waivers and variances from the zoning ordinance and the reservoir protection overlay ordinance and that, if she is successful, her improvements may degrade the reservoir.

Of course, this argument confuses the power of eminent domain with regulatory power. The County does not condemn property under its power of eminent domain simply to protect a body of water from pollution and degradation. By the appropriate exercise of its regulatory powers, which it has already done, the County can reach the result it seeks. (Incidentally, the professed fear that waivers and variances would cause detriment to the reservoir seems a bit odd, since it would be County officials making those determinations.)

Finally, no evidence was presented to support the County's "prevent future detriment" argument. In fact, there is nothing in the pleadings or evidence to

suggest that the County has ever based its taking of the 1.85-acre residue on such ground.

Third, the County contends that the taking of the 1.85-acre residue is proper because it is an "uneconomic remnant."

Virginia Code § 25-248(h)(i) provides that if acquisition of only part of a property would leave the landowner with an "uneconomic remnant," the condemnor "shall offer to acquire the entire property." From this, the County extrapolates that it has the power to take the remnant if its offer is rejected. That argument is without merit. The provision in § 25-248 is for the benefit of the landowner. It is not intended to bestow upon the condemnor the authority to acquire land by eminent domain that is not needed in connection with the public purpose for which other adjoining land is being taken.

The Commissioner of Transportation has been given express authority to acquire a landowner's entire tract, up to two acres, if a partial acquisition would leave the remainder practically worthless. Virginia Code § 33.1-91. That provision has no application here. In fact, its existence in the statutes related to highway condemnations is persuasive that the County has no similar authority.

At bottom, the County's own evidence establishes that the 1.85-acre residue of the Johns parcels is not being taken for the reservoir, which is the public purpose that gave rise to this eminent domain proceeding, nor is it accessory to or in conjunction with the reservoir project. Rather, the taking is an after-thought, and its justification from the beginning has been that the 1.85-acre residue is an "uneconomic remnant." As noted above, the County has no authority to condemn property on the ground that it is an "uneconomic remnant."

Further, the evidence is insufficient to establish that the 1.85-acre residue is unusable. The County's witnesses conceded that the residue is of sufficient size to accommodate a single family dwelling under public land use regulations and Mineral Springs Plantation's covenants. At the hearing on June 13, 2003, no one would speculate whether any waivers or variances would be granted or denied. If, as the County seems to fear, Johns can make use of the residue by obtaining variances and waivers to improve the parcel for her enjoyment, the residue is not an "uneconomic remnant," and the County's reason for the taking falls of its own weight.

Interestingly, Johns makes it clear in her testimony that she wishes to retain ownership of the residue even if she cannot build on it or otherwise improve it. Apparently, she would find enjoyment simply hiking and picnicking on it.

The County has the power of eminent domain, and it has the authority to exercise that power with considerable discretion, particularly when it comes to a determination of public purpose, necessity of the project, and even the amount of land needed for the project. Courts review the exercise of that discretion cautiously and only for arbitrary and capricious decision-making. Here, the court is of the opinion that the County's decision to take the 1.85-acre residue of Johns' lot is arbitrary and capricious, it serves no public purpose, it is not necessary, and it is beyond the authority delegated to the County by statute. The County's own evidence clearly establishes that the taking of that portion of Johns' lot has nothing to do with the reservoir. Instead, it is an ill-conceived attempt to prevent some undefined "windfall" either through an assertion of damages in these condemnation proceedings or through obtaining variances and waivers of land use regulations in the future, or both.

Mr. Ackerman will please prepare and circulate an appropriate order denying the County the right to proceed with the acquisition of the 1.85-acre residue.